# EXHIBIT A

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| U.S. OFFICE OF SPECIAL COUNSEL, )<br>*ex rel.* **Former Employee** ███████ )<br>**Petitioner** )<br> )<br>**v.** )<br> )<br>**DEPARTMENT OF VETERANS AFFAIRS,** )<br>**Respondent.** )<br> ) | **Docket No.**<br><br>**Date:** February 21, 2025 |

### U.S. OFFICE OF SPECIAL COUNSEL'S
### INITIAL REQUEST FOR STAY OF PERSONNEL ACTIONS

The U.S. Office of Special Counsel (OSC) requests that the Merit Systems Protection

Board (Board) stay for 45 days the probationary termination of former federal employee ██,

hereinafter "Complainant ██," by the Department of Veterans Affairs (VA).[1]  *See* 5 U.S.C. §

1214(b)(1)(A); 5 C.F.R. § 1201.134.  OSC requests that this stay request be adjudicated together

with the concurrently-filed requests to stay the probationary terminations of former federal

employees ██, ██ ██ ██, and ██ (collectively with Complainant ██, the "Complainants"),

by the Department of Education (ED), Department of Energy (DOE), Department of Housing

and Urban Development (HUD), Office of Personnel Management (OPM) and Department of

Agriculture (USDA) (collectively with VA, the "Agencies").

---

[1] To ensure compliance with the Board's procedural requirements, Complainant ██ has consented to be identified in this stay request, but asks that the Board use a pseudonym in its decision and any other publicly-available document.  In consideration of this request, OSC has used Complainant ██'s name in the caption, but otherwise refers to them by their initials and asks that the Board do the same.  Complainant ██ is fully identified in the attached termination notice and declaration, which they provided to OSC in support of their prohibited personnel practice complaint.

1

OSC has reasonable grounds to believe that the Agencies engaged in prohibited personnel practices under 5 U.S.C. § 2302(b)(12) by terminating Complainants in violation of the federal laws and regulations governing probationary terminations and reductions in force (RIF). *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351; 5 C.F.R. § 315.801 *et seq.* As a result, OSC has an obligation to request relief from the Board where appropriate. 5 U.S.C. § 1212(a) ("The Office of Special Counsel *shall*…protect employees…from prohibited personnel practices…and, where appropriate [] bring petitions for stays") (emphasis added).

## INTRODUCTION

In accordance with its legal responsibility to safeguard the merit system, OSC seeks this stay because the probationary terminations at issue in this matter appear to have been effectuated in a manner inconsistent with federal personnel laws. In most cases, probationary employees in the competitive service may only be terminated if their performance or conduct demonstrates that they are unfit for federal employment. If agencies wish to terminate probationary employees not for performance or conduct, but as part of a general restructuring or downsizing, they must initiate a reduction in force (RIF) and follow the relevant procedures for that process.

As described below, the rules for probationary terminations and conducting RIFs are not technicalities. Rather, they implicate federal employees' substantive and procedural rights.

## STATEMENT OF FACTS

## I.   PREPARATIONS MADE TO REDUCE AND REORGANIZE THE FEDERAL WORKFORCE

Between January 20 and February 11, 2025, President Trump and OPM issued executive orders and memoranda in connection with plans to reduce and reorganize the federal workforce. For example, on January 20, 2025, the President issued an Executive Order establishing the Department of Government Efficiency, and OPM issued guidance on probationary periods,

advising agencies that probationary periods are "an essential tool for agencies to assess employee performance and manage staffing levels," directing agencies to provide OPM with a list of all probationary employees, and instructing agencies to "promptly determine" whether probationary employees should be retained.[2]  On February 11, 2025, the President issued an Executive Order directing agency heads to "promptly undertake preparations to initiate large-scale reductions in force…" and to develop "[r]eorganization [p]lans."[3]  According to public reporting, on February 13, 2025, OPM officials met with federal agency leaders to provide guidance on how to carry out probationary termination actions as part of the broader effort to restructure and downsize the federal workforce.[4]

## II.    THE AGENCIES' TERMINATIONS OF COMPLAINANTS

Between February 12 and February 14, 2025, the Agencies terminated Complainants, probationary employees at six separate federal agencies, from federal service.  Based on public reporting, each was terminated at the same time as significant numbers of other federal employees.[5]  The language in Complainants' termination notices is quite similar and does not describe any specific issues with any of the Complainants' performance or conduct.  Notably,

---

[2] EXEC. ORDER NO. 14158, *Establishing and Implementing the President's "Department of Government Efficiency,"* 90 Fed. Reg. 8441 (Jan. 20, 2025); U.S. OFF. OF PERSONNEL MGMT., Guidance on Probationary Periods, Administrative Leave and Details (Jan. 20, 2025).

[3] EXEC. ORDER NO.14210, *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025); *see* WHITE HOUSE, Fact Sheet: President Donald J. Trump Works to Remake America's Federal Workforce (Feb. 11, 2025) (explaining that DOGE will assist with "shrink[ing] the size of the federal workforce," "large-scale reductions in force," "reducing the size and scope of the federal government," and "shrink[ing] the administrative state.").

[4] Jory Heckman, *OPM advises agencies to fire probationary employees after 'deferred resignation' deadline*, Fed. News Network (Feb.13, 2025), https://federalnewsnetwork.com/workforce/2025/02/opm-fires-probationary-employees-after-deferred-resignation-deadline/; Ted Oberg, *Trump administration tells federal agencies to fire probationary employees*, NBC4 (Feb. 13, 2025), https://www.nbcwashington.com/news/president-trump-politics/opm-federal-agencies-probationary-employees-trump-administration/3844634/.

[5] Tami Luhby et al., *Thousands of probationary employees fired as Trump administration directs agencies to carry out widespread layoffs*, CNN (Feb. 14, 2025), https://www.cnn.com/2025/02/14/politics/probationary-federal-employees-agencies-firings-doge/index.html.

only three of the notices mention performance or conduct at all as a justification for the termination, and none provide any detail or individualized assessment.

The following is the specific factual information relevant to each Complainant, based on the information OSC has reviewed to this point:

### 1.     ED Program Support Specialist

Complainant ▮ served as a probationary Program Support Assistant in the competitive service with ED.  Ex. 1, Complainant ▮ Declaration, ¶¶ 3-4.  Complainant ▮ was hired with a 100% disabled veteran's preference after 14 years with the Army.  *Id.*, ¶ 5.  Throughout his tenure, he received consistent praise from leadership, and there is no evidence of any performance issues.  *Id.*, ¶ 9.  However, on February 12, 2025, Complainant ▮ was issued a termination notice that stated, in relevant part:

> I regrettably inform you that I am removing you from your position of Program Support Specialist with the agency and the federal civil service effective today.

Ex. 2, ED Notice.  Earlier that same day, Complainant ▮s supervisor had commended his exceptional performance, praising his dedication and calling him a perfect fit for the team.  Ex. 1, ¶ 11.

Both Complainant ▮ and the media reported that, on or around February 12, 2025, about 60 probationary employees at ED received written notifications that they were being terminated, effective immediately.  *Id.*, ¶ 15.[6]

---

[6] Joey Garrison, *Firings across federal government begin after Trump, Musk order sweeping cuts*, USA TODAY (Feb. 13, 2025), https://www.usatoday.com/story/news/politics/2025/02/13/trump-musk-federal-workforce-mass-firings/78524273007/.

### 2.    *DOE Program Communications Specialist*

Complainant ▮ served as a probationary Program Communications Specialist with DOE in the excepted service.  Ex. 3, Complainant ▮ Declaration, ¶¶ 3-4.  Complainant ▮'s performance record was strong, with no documented performance or conduct issues.  *Id.,* ¶¶ 8-9.  In December 2024, Complainant ▮ received a "Significantly Exceeds Expectations" performance rating.  *Id.*  Despite her supervisor's request for the agency to retain her, she was terminated on February 13, 2025.  *Id.*, ¶ 3.  The termination notice stated, in relevant part:

> Per OPM instructions, DOE finds that your further employment would not
> be in the public interest.  For this reason, you are being removed from
> your position with DOE and the federal civil service effective today.

Ex. 4, DOE Notice.

On or around February 13, 2025, DOE terminated between 1,200 and 2,000 employees, including probationary employees.  According to public reporting, notices provided to many of these employees stated that their further employment would not be in the public interest.[7]  A DOE official reportedly said that DOE removed OPM's suggested phrasing citing "performance reasons" from its termination letters because many of the terminated employees had performed well during their probationary period.[8]

### 3.    *HUD Trial Attorney*

Complainant ▮ served as a probationary Trial Attorney in the excepted service with HUD.  Ex. 5, Complainant ▮ Declaration, ¶¶ 3-4.  Complainant ▮ had very good performance and, in November 2024, Complainant ▮ received an "4" performance rating.  *Id.*, ¶ 9.

---

[7] Gabe Whisnant & Peter Aitken, *Trump Moves to Fire Staff Overseeing Nuclear Weapons Then Backtracks—Report*, NEWSWEEK (Feb. 14, 2025), https://www.newsweek.com/trump-fires-hundreds-staff-overseeing-nuclear-weapons-report-2031419.

[8] Shannon Bond et al., *Sweeping cuts hit recent federal hires as Trump administration slashes workforce*, NPR (Feb. 13, 2025), https://www.npr.org/2025/02/13/nx-s1-5296928/layoffs-trump-doge-education-energy.

Complainant ▮ has also received several performance awards and has not been informed of any performance or conduct issues. *Id*. On February 14, 2025, Complainant ▮ received a notice of termination that contained the following language:

> The purpose of this notice is to notify you of the decision to terminate your employment with the U.S. Department of Housing and Urban Development (HUD), during your trial period, in order to promote the efficiency of the federal service in accordance with the priorities of the Administration…After careful consideration, the Agency is terminating your employment as of the date of the transmission of this email, during your trial period as *part of a workforce restructuring of the Agency*.

Ex. 6, HUD Notice (emphasis added).

Senator Patty Murray issued a press release expressing concern from several senators over reports that HUD had terminated hundreds of probationary employees on February 14.[9]

### 4.    *OPM Benefits Analyst*

Complainant ▮ worked at OPM as a probationary Benefits Analyst in the excepted service. Ex. 7, Complainant ▮ Declaration, ¶¶ 1, 3.[10] Complainant ▮ received a positive performance rating during her tenure, with no indication of any performance or conduct issues. *Id*., ¶ 2. Although Complainant ▮'s managers repeatedly requested that Complainant ▮ be retained, on February 13, 2025, Complainant ▮'s employment was terminated. *Id*., ¶ 5. The termination notice states, in relevant part:

> The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest. For this reason, the Agency informs you that effective at the close of business today (February 13, 2025), you are being terminated from your position with the Agency and the federal civil service during your trial period.

---

[9] Press Release, U.S. Senator Patty Murray. Murray, Warren, Gillibrand, Smith, and Schumer Demand Trump & Elon Halt Cuts to HUD Workforce, Press for Answers on HUD's Capacity to Meet Critical Functions & Deliver Essential Services (Feb. 16, 2025), https://www.murray.senate.gov/murray-warren-gillibrand-smith-and-schumer-demand-trump-elon-halt-cuts-to-hud-workforce-press-for-answers-on-huds-capacity-to-meet-critical-functions-deliver-essential-servic/.

[10] Due to an apparent numbering error, this declaration repeats several paragraph numbers.

Ex. 8, OPM Notice (emphasis removed).  Complainant ██'s supervisor, who was caught off guard by the termination, clarified that the action was not based on poor performance.  Ex. 7, ¶¶ 5, 11.

According to public reporting, OPM terminated approximately 70 probationary employees on February 13, 2025.  These employees were also told the agency finds "[b]ased on your performance, that you have not demonstrated that your further employment at the agency would be in the public interest."[11]

### 5.     *VA Training Specialist*

Complainant ██, a disabled U.S. Navy veteran dedicated to serving fellow veterans, served in the excepted service as a probationary Training Specialist with the VA.  Ex. 9, Complainant ██ Declaration, ¶¶ 3-4, 6.  Despite having no indication of performance or conduct issues, on February 13, 2025, Complainant ██ received a termination notice.  *Id.*, ¶¶ 3, 11.  Until it was issued, Complainant ██'s supervisor was unaware of the termination action, which stated, in relevant part:

> The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest.  For this reason, the Agency informs you that the Agency is removing you from your position with the Agency and the federal civil service effective February 13, 2025.

*Id.*, ¶ 12, Ex. 10, VA Notice.

Complainant ██ was one of over 1,000 probationary employees who were terminated on February 13, 2025.  The agency released a statement that day, attributing the terminations to a

---

[11] Heckman, *supra* at n.5.

"government-wide Trump Administration effort to make agencies more efficient, effective and responsive to the American People."[12]

### 6.    *USDA Loan Specialist*

Complainant ■ worked at USDA in the competitive service as a probationary loan specialist.  Ex. 11, Complainant ■ Declaration, ¶¶ 3-4.  Throughout this tenure, he consistently exhibited strong performance and received positive feedback.  *Id*., ¶¶ 7-8.  On February 13, 2025, Complainant ■ was notified of his termination.  *Id*., ¶ 3.  The termination notice states, in relevant part:

> The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest.  For this reason, the Agency informs you that the Agency is removing you from your position….

Ex. 12, USDA notice.  While the notice indicates that the action is based on Complainant ■'s performance, Complainant ■ had not been informed of any performance issues, nor did the notice cite specific concerns.  Ex. 11, ¶ 11.  Complainant ■'s supervisor was "shocked" by the action, offering to rehire Complainant ■ and serve as a reference. Ex. 11, ¶ 12.

Around the same time, USDA terminated probationary employees across three of its subagencies, including the U.S. Forest Service—which alone terminated up to 3,400 probationary workers.[13]  As with Complainant ■, according to public reporting, these terminated employees received a letter informing them that "[t]he Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest."[14]

---

[12] Press Release, U.S. Dep't of Veterans Affs. VA dismisses more than 1,000 employees (Feb. 13, 2025), https://news.va.gov/press-room/va-dismisses-more-than-1000-employees/.

[13] Tami Luhby et al., *supra* at n.6.

[14] Leah Douglas, *USDA probationary staff fired at three agencies, sources say*, REUTERS (Feb.14, 2025), https://www.reuters.com/world/us/usda-probationary-staff-fired-two-research-agencies-sources-say-2025-02-14/.

## ARGUMENT

### I.    LEGAL STANDARD FOR STAY REQUESTS

OSC may request any member of the Board to order a stay of any personnel action for a period of 45 days if OSC determines that reasonable grounds exist to believe that a personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.  5 U.S.C. § 1214(b)(1)(A)(i).  Indeed, pursuant to 5 U.S.C. 1212, OSC has a legal obligation to protect federal employees from prohibited personnel practices and petition for a stay "where appropriate."  See 5 U.S.C. § 1212(a).

OSC may file a stay request after the effective date of a personnel action.  *Special Counsel ex rel. Perfetto v. Dep't of Navy*, 83 M.S.P.R. 169, 173 (1999).  The Board member "shall" grant the stay "unless the [Board] member determines that, under the facts and circumstances involved, such a stay would not be appropriate."  5 U.S.C. § 1214(b)(1)(A)(ii).

In evaluating the sufficiency of a stay request, the Board will view the facts in the light most favorable to a finding that the personnel action to be stayed is the result of a prohibited personnel practice.  *Special Counsel v. Dep't of Treasury*, 70 M.S.P.R. 578 (1996).  OSC's stay request need merely fall within the "range of rationality" to be granted.  *Perfetto,* 83 M.S.P.R. at 173 (quoting *In re Kass*, 2 M.S.P.R. 79, 96 (1980) (interpreting the predecessor provision to 5 U.S.C. § 1214)).

### II.    OSC HAS REASONABLE GROUNDS TO BELIEVE THAT THE COMPLAINANTS' TERMINATIONS VIOLATE 5 U.S.C. § 2302(B)(12)

Under 5 U.S.C. § 2302(b)(12), it is a prohibited personnel practice for an agency to take or fail to take a personnel action where "the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]."  Complainants allege that the probationary terminations

described in this Initial Request for Stay of Personnel Actions (Stay Request) are personnel actions, as defined at 5 U.S.C. § 2302(a)(2)(A), that violate 5 U.S.C. § 3502, 5 C.F.R. Part 351, and 5 C.F.R. § 315.801 *et seq.*  These statutes and regulations concern the following merit system principles:

- Selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills;

- All employees should receive fair and equitable treatment with proper regard for their constitutional rights;

- The Federal work force should be used efficiently and effectively;

- Employees should be retained on the basis of the adequacy of their performance; and

- Employees should be protected against arbitrary action.

*See* 5 U.S.C. §§ 2301(b)(1), (2), (5), (6), (8)(A).  As set forth below, OSC has reasonable grounds to believe that the terminations therefore constitute prohibited personnel practices under section 2302(b)(12).

### A.    The Probationary Terminations Appear to Violate RIF Statute and Regulations

The available evidence indicates that Agencies improperly used the probationary status of employees to accomplish a RIF without affording the employees the substantive rights and due process they are entitled to by law.[15]  Based on public statements, the Agencies' decision to terminate large numbers of probationers was to accomplish reorganizations and cost savings; in other words, a RIF.

---

[15] *See* U.S. OFF. OF PERSONNEL MGMT., Workforce Reshaping Operations Handbook A Guide for Agency Management and Human Resource Offices (2017), https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force/workforce_reshaping/.

Because 1) agencies are prohibited from circumventing the requirements set forth in the RIF statute and regulations, which apply equally to probationary employees, 2) the evidence indicates that Agencies improperly terminated Complainants without reference to those requirements, and 3) the violation denied Complainants both substantive and procedural rights, OSC has reasonable grounds to conclude that Agencies have engaged in prohibited personnel practices.

### 1.    *Agencies are Prohibited from Circumventing RIF Requirements*

Agencies must follow the RIF statute and regulations when the employee's release is required for reasons including lack of work, shortage of funds, and reorganization. *See* 5 C.F.R. § 351.201. The regulations define a reorganization as "the planned elimination, addition, or redistribution of functions or duties in an organization." 5 C.F.R. § 351.203. The Federal Circuit has "defined a 'reduction in force' as an 'administrative procedure' by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *See Tippins v. U.S.*, 93 F.4th 1370, 1375 (Fed. Cir. 2024). OPM's website similarly explains that, "An agency is required to use the RIF procedures when an employee is faced with separation or downgrading for a reason such as reorganization, lack of work, [or] shortage of funds…."[16]

Each agency has the right to decide whether a RIF is necessary and when the RIF will take place. However, agencies do not have discretion to bypass RIF procedures when they are reorganizing or reducing the size of components based on lack of work or budgetary concerns. *See James v. Von Zemenszky,* 284 F.3d 1310, 1321 (Fed. Cir. 2002) (holding that the VA did not have "the authority to implement a system for implementing RIFs contrary to the title 5 RIF

---

[16] *Reductions in Force*, U.S. OFF. OF PERSONNEL MGMT., https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force/ (last visited Feb. 17, 2025).

framework mandated by Congress"). Importantly, probationary employees are not excluded from RIF procedures. *See* 5 C.F.R. § 351.202. It is an agency's burden to prove before the Board that its decision not to use RIF procedures complied with the regulations. *See Carter v. Small Bus. Admin.*, 23 M.S.P.R. 309, 311-312 (1984) (citing *Losure v. Interstate. Com. Comm'n*, 2 M.S.P.R. 361, 365-66 (1980)).

Agencies cannot avoid following the RIF requirements when the purpose of the action is to address a shortage of funds or a reorganization. *See McClure v. Fed. Emergency Mgmt. Agency*, 32 M.S.P.R. 672, 676 (1987); *see also Moody v. Dep't of Justice*, 2009 MSPB LEXIS 1917, *7 (April 2, 2009).

### 2. *The Agencies Likely Cannot Meet their Burden to Show that RIFs Were Not Required to Terminate the Probationers*

Based on the evidence OSC has reviewed, including official directives, public statements, and the termination notices issued to Complainants, it appears that the Agencies terminated probationary employees not to eliminate poor performers but rather because of a purported lack of work, shortage of funds, and reorganization, which require use of RIF procedures. *See* 5 C.F.R. § 351.201. For example, OPM directed agencies to provide lists of all probationary employees and stated that "probationary periods are an essential tool for agencies to assess employee performance and *manage staffing levels*."[17]

Additionally, the February 11, 2025 Executive Order directed agencies to start planning for RIFs that would prioritize eliminating "offices that perform *functions* not mandated by statute or other law" and excluding "*functions* related to public safety, immigration enforcement, or law

---

[17] U.S. OFF. OF PERSONNEL MGMT., Guidance on Probationary Periods, Administrative Leave and Details, *supra* at n.3 (emphasis added).

enforcement" from RIFs.[18]  Two days later, an OPM spokesperson described the mass

terminations as actions "in support of the President's broader efforts to *restructure* and

*streamline* the federal government."[19]

USDA and VA made their own public statements confirming that the purpose of their

February 13 terminations of Complainants and other probationary employees was supporting the

President's direction to downsize government agencies and reduce spending.[20]  A DOE official

reportedly described that OPM "had suggested the agency use a template that cited 'performance

reasons'" for probationary terminations but that DOE "had removed that phrasing because many

of the employees had performed well during their probationary period."[21]  These public

statements indicate that Agencies terminated Complainants and other probationary employees for

reasons that would require compliance with RIF regulations.

The content of the Complainants' termination notices further signals that the terminations

were issued to reduce the numbers of overall employees rather than because the Complainants

failed to meet expectations during their trial periods.  The Complainants all received their

termination notices between February 12 and 14.  *See* Ex. 2, 4, 6, 8, 10, 12.  The notices OPM,

USDA, and VA issued to Complainants all state that: "The Agency finds, based on your

performance, that you have not demonstrated that your further employment at the Agency would

be in the *public interest*." Ex. 4, 8, 10, 12 (emphasis added).  The DOE termination notice plainly

---

[18] EXEC. ORDER NO.14210, *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, *supra* at n.4 (emphasis added).

[19] Rebecca Beitsch, *OPM Directs Agencies To Fire Government Workers Still On Probation*, THE HILL (Feb. 13, 2025), https://thehill.com/homenews/administration/5144113-federal-probationary-employees-fired/ (emphasis added).

[20] Robert Thorpe, *List of Federal Agencies That Have Begun Mass Layoffs of Probationary Employees*, NEWSWEEK (Feb. 14, 2025), https://www.newsweek.com/federal-agencies-that-have-begun-mass-layoffs-probationary-employees-doge-2031543; U.S. Dep't of Veterans Affs., *VA Dismisses More than 1,000 Employees*, *supra* at n.13.

[21] Shannon Bond et al., *supra* at n.9.

states that it is acting "*[p]er OPM instructions*." Ex. 4 (emphasis added). ED's notice did not

provide any reason for the Complainant's immediate termination. Ex. 2. HUD's explanation in

its notice to the Complainant did not mention performance and instead explained that it was

terminating Complainant "*as part of a workforce restructuring of the Agency.*" Ex. 6 (emphasis

added).

Based on the evidence available to OSC, there are reasonable grounds to believe that the

Agencies improperly circumvented RIF regulations by terminating Complainants and other

probationary employees *en masse* without regard to each employee's individual performance for

the purpose of restructuring government agencies and reducing costs.

### 3.    *Failing to Use RIF Requirements Deprives Employees of Substantive and Procedural Rights*

The Agencies' failure to apply RIF regulations has deprived Complainants of substantive

as well as procedural rights that could allow them to keep their jobs or be reassigned to new

positions and would have allowed them, at a minimum, to remain employed during the RIF

process. RIF regulations provide for an orderly process of determining which employees are

retained rather than separated and ensuring that those decisions are made according to merit-

based factors. *See* 5 U.S.C. § 3502; 5 C.F.R. §§ 351.501-506. The law requires that employees

with better performance ratings and disabled veterans with veterans' preference are retained over

other competing employees in their retention groups. 5 U.S.C. § 3502. For both excepted and

competitive service employees, probationary employees are placed in the second of three

retention groups. *See* 5 C.F.R. §§ 351.501-502.

The Complainants ▉ and ▉ are disabled veterans, whose status would afford them

preference in the RIF retention schedules. Ex. 1, 9. The excepted service Complainants, whose

probationary period is two years, terminated from DOE, HUD, USDA, and OPM all had

favorable annual performance ratings and tenure of more than one year, which could likewise give them preference over employees with shorter tenure and less favorable performance in a RIF. Ex. 3, 5, 7, 11. Thus, it is not a foregone conclusion that Complainants would be separated during a RIF.

In addition to the substantive rights to be considered for retaining their position or being reassigned to another position, the RIF regulations require agencies to provide employees with 60 days of notice and to keep employees in a paid status during that time if possible. *See* 5 C.F.R. §§ 351.803; 351.806. The notice is also required to provide employees with information about their right to reemployment and career transition assistance. *See* 5 C.F.R. § 351.803.

The regulations also provide employees subject to RIF with notice and the right to appeal their termination, demotion, or more than 30-day furlough to the Board. *See* 5 C.F.R. § 351.901. The Board's jurisdiction to hear an appeal of an action taken pursuant to a RIF or that should have been conducted pursuant to a RIF is not dependent on the individual's probationary status or on the length of the individual's current continuous service. *Bielomaz v. Dep't of Navy*, 86 M.S.P.R. 276, 280 (2000).

Accordingly, the Agencies' actions appear to have deprived Complainants of their entitlement to some additional period of employment, compensation, benefits, career transition assistance information, possible accrual of tenure, as well as due process rights.[22]

---

[22] Board precedent is consistent that the remedy to improper circumvention of RIF regulations is to cancel the action the agency took. *See e.g., Williams v. Dep't of Army*, 49 M.S.P.R. 405, 414 (1991).

**B.      The Probationary Terminations of Competitive Service Employees Appear to Violate Applicable Regulations**

The Civil Service Reform Act ("CSRA") provides that individuals hired into the competitive service must serve a one-year probationary or trial period.[23]  5 C.F.R. § 315.801-802.  For these employees, the regulations promulgated by OPM state explicitly that agencies "*shall* utilize the probationary period as fully as possible *to determine the fitness of the employee* and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."  5 C.F.R. § 315.803 (emphasis added). In short, to terminate a probationary employee, an agency "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job."  *McGuffin v. SSA*, 942 F.3d 1099, 1102 (Fed. Cir. 2019) (citing *Shaw v. United States*, 622 F.2d 520, 223 (Ct. Cl. 1980); *see also Perlongo v. United States*, 215 Ct. Cl. 982, 983 (1977).

Where an employee's "work performance or conduct during [his probationary] period fails to demonstrate his fitness or his qualifications for continued employment," an agency may terminate the employee by notifying him "in writing as to why he is being separated and the effective date of the action."  5 C.F.R. § 315.804(a).  This notice "shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct."  *Id*.

Probationary employees have only limited rights to challenge personnel actions taken against them.  5 C.F.R. § 315.806.  However, while the threshold for terminating a probationary

---

[23] The use of a probationary period to assess new employees has been an integral part of the civil service for over 100 years.  Congress established a probationary period in the 1883 Pendleton Act, 22 Stat. 403, ch. 27 (amended 1978); *see* 22 Stat. 404, ch. 27, § 2(2)4; *see also Kato v. Ishihara*, 360 F.3d 106, 113 (2d Cir. 2004); *INS v. FLRA*, 709 F.2d 724, 725 n.1 (D.C. Cir. 1983).  Congress reaffirmed the importance of the probationary period with the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101–7135, which expanded the probationary period beyond new employees to existing employees who are appointed to managerial and supervisory positions.  *Compare* 5 U.S.C. § 3321 (1976) (establishing a "period of probation before an appointment in the competitive service becomes absolute") *with* 5 U.S.C. § 3321(a) (1982) (authorizing a probationary period for new employees and appointments to managerial and supervisory positions); *see also Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 737 F.3d 273, 276–77 (4th Cir. 2013).

employee is significantly lower than for a tenured employee, it is not zero – probationary employees cannot be terminated "at will."  Agencies must inform probationary employees of the specific reasons for their termination, which necessarily requires agencies to conduct an individualized assessment of their performance and conduct.  This requirement is not a simple bureaucratic technicality – compelling agencies to assess the specific fitness of each employee prior to terminating them ensures that outstanding employees are not arbitrarily lost and that terminations are truly in the best interests of the federal service and consistent with merit system principles.

For these reasons, terminating probationary employees in the competitive service for reasons other than their individual fitness for federal employment violates 5 C.F.R. § 315.801 *et seq*.  As these regulations and statutes implement or directly concern the merit system principles described in 5 U.S.C. §§ 2301(b)(1), (5), (6), and (8)(A), violating them constitutes a prohibited personnel practice under section 2302(b)(12).

Two of the Complainants in this matter were in the competitive service and OSC has reasonable grounds to believe that they were terminated in violation of 5 C.F.R. § 315.801 *et seq*.  The declarations submitted by these Complainants lead OSC to believe that ED and USDA have not conducted any individualized assessments of their employees and instead seem to have issued form letters to terminate probationary employees *en masse*.

### 1.    *Complainant* ▉

The termination letter ED sent to Complainant ▉ states that "I regrettably inform you that I am removing you from your position of Program Support Specialist with the agency and the federal civil service effective today, February 12, 2025."  Ex. 2 (ED letter).  The letter does not allege that ED was taking this action due to any performance or conduct issues.  *Id*.

Complainant ■ submitted a declaration averring that he had no performance or conduct issues, and in fact that the feedback he had received was very good. Ex. 1, ¶ 9. Complainant ■ also stated neither his upper management or his supervisor had been aware of his termination and that his supervisor was surprised by it. *Id.*, ¶¶ 11-12. Complainant ■ stated that he was aware of one other probationary employee who received an identical letter and believes the same is true of about 60 other probationary employees. *Id.*, ¶ 15. This evidence, combined with the public statements discussed above about the government's rationale for removing probationary employees, provide OSC with reasonable grounds to believe that Complainant ■ had no performance or conduct issues and that his termination constitutes a prohibited personnel practice under section 2302(b)(12) that should be stayed.

### 2.     *Complainant* ■

The termination letter USDA sent to Complainant ■ states that "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest." Exhibit 12 (USDA letter).

Although performance was referenced in the letter, there is no indication that USDA did an individual assessment of Complainant's work. In a declaration, Complainant ■ also averred that his supervisor told him she was unaware of his termination and that his program director wanted to retain him. Ex. 11, ¶¶ 11-12. Complainant ■ believes that six probationary employees in his department were terminated with an identical letter and stated that he understood the same was true of every USDA probationary employee in California. *Id.*, ¶¶ 13-16. This evidence, combined with the public statements discussed above about the government's rationale for terminating probationary employees, provide OSC with reasonable grounds to

believe that Complainant ██ had no performance or conduct issues and that his termination constitutes a prohibited personnel practice under section 2302(b)(12) that should be stayed.

It is noteworthy that, as discussed in detail above, the termination letters DOE, HUD, OPM, and VA issued to their own probationary employees follow a similar pattern.  In no case do the letters OSC has reviewed demonstrate that Agencies are conducting individualized assessments to ensure they are terminating probationary employees only for performance, conduct, or pre-appointment conditions.  Rather, the text of these letters and public statements indicate that Agencies terminated probationary employees to accomplish organizational objectives and not due to the performance or conduct of individual probationers.

## III.    A 45-DAY STAY OF COMPLAINANTS' TERMINATIONS IS APPROPRIATE

The Board must grant the Special Counsel's request for a stay unless the Special Counsel's claim is "inherently unreasonable."  *Special Counsel v. Dep't of Veterans Affairs*, 45 M.S.P.R. 403, 405 (1990) (citing *Kass*, 2 M.S.P.R. at 91).

Here, OSC has reasonable grounds to believe that the Agencies violated 5 U.S.C. § 2302(b)(12) because 1) for all the named Complainants, the Agencies failed to comply with applicable RIF statutes and regulations; and 2) in terminating Complainants ██ and ██, the relevant Agencies did not comply with 5 C.F.R. 315.804.  *See* 5 U.S.C. § 1214(b)(1)(A)(i).  A stay of these terminations will allow OSC to investigate further their complaints and minimize the adverse consequences of the apparent  prohibited personnel practice.  *See Special Counsel v. Dep't of Navy*, 85 M.S.P.R. 92, 25 (2000) ("A stay granted pursuant to 5 U.S.C. § 1214(b) is issued to maintain the *status quo ante…*"); *see also Special Counsel v. Dep't of Veterans Affairs*, 60 M.S.P.R. 40 (1993).  Here, the consequences for Complainants are grave, including loss of pay and benefits, loss of their federal careers, and deprivation of their legal rights.

## REQUEST FOR RELIEF

OSC requests that a member of the Board:

1. Order the Department of Veterans Affairs to stay, for a period of 45 days, Complainant

   ███'s probationary termination and return Complainant ██ to full pay and duty status until

   the stay expires or is otherwise lifted;

Respectfully submitted,

*Hampton Dellinger*

_____

Hampton Dellinger
Special Counsel

███████████████

U.S.  Office of Special Counsel
1730 M Street, N.W., Suite 218
Washington, D.C.  20036-4505