# EXHIBIT B

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. JOHN DOE,[1]
               Petitioner,

       v.

DEPARTMENT OF ▓▓▓▓,
            Agency.

DOCKET NUMBER
CB-1208-25-▓▓▓▓

DATE:  February 25, 2025

# THIS STAY ORDER IS NONPRECEDENTIAL[2]

Hampton Dellinger, Esquire, Washington, D.C., for the petitioner.

Bruce Fong, Esquire, Oakland, California, for the petitioner.

John Doe, pro se.

Jenny Knopinski, Esquire, and Jocelyn E. Richards, Esquire, Washington,
    D.C., for the agency.

## BEFORE

Raymond A. Limon, Member

---

[1] I find it appropriate to grant the relator's request for anonymity in this matter. Accordingly, the matter has been recaptioned as "John Doe."

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

## ORDER ON STAY REQUEST

Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay the probationary terminations of six former Federal employees (the relators), including the above-captioned former employee/relator, for 45 days while OSC further investigates their complaints.[3]   For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

On February 21, 2025, OSC filed six stay requests, including the instant request.   *Special Counsel ex rel. John Doe v. Department* ▮▮▮▮▮, MSPB Docket No. CB-1208-25-▮▮▮▮, Stay Request File (SRF), Tab 1.  In the stay requests, OSC asserts that it has reasonable grounds to believe that the named agencies engaged in prohibited personnel practices under 5 U.S.C. § 2302(b)(12) by terminating the relators in violation of the Federal laws and regulations governing reductions-in-force (RIFs) and probationary terminations. *Id.* at 5.

OSC alleges that, between February 12 and February 14, 2025, the agencies terminated the six relators, all of whom were probationary employees, from Federal service.   *Id.* at 6, 16. OSC asserts that the probationary terminations occurred concurrently with a significant number of other Federal employee terminations.   *Id.* at 6.  OSC avers that the language in each of the six termination notices was "quite similar" and did not address any specific issues with the relators' performance or conduct.   *Id.*  In each stay request, OSC summarizes the circumstances surrounding the termination of the six relators.   *Id.* at 7-11. These summaries indicate that none of the six relators had any noted performance deficiencies.[4]   *Id.*   With its stay request, OSC provides copies of the six

---

[3] The stay requests pertaining to the five other former employees/relators have been separately docketed.

[4] For example, one relator, a 100% disabled veteran, was terminated from his position on the same day that his supervisor had commended him for his "willingness to go

3

termination letters and statements from the relators made under penalty of perjury attesting to the circumstances surrounding each of the terminations. *Id.* at 26-65.

## ANALYSIS

Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC "may request any member of the Merit Systems Protection Board to order a stay of any personnel action for 45 days if [OSC] determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice." Such a request "shall" be granted "unless the [Board] member determines that, under the facts and circumstances involved, such a stay would not be appropriate." 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed. *E.g.*, *Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010). Deference is given to OSC's initial determination, and a stay will be denied only when the asserted facts and circumstances appear to make the stay request inherently unreasonable.[5] *E.g.*, *Special Counsel v. Department of Veterans Affairs*, 50 M.S.P.R. 229, 231 (1991).

At issue in the instant stay requests is 5 U.S.C. § 2302(b)(12), which provides that it is a prohibited personnel practice to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]." 5 U.S.C. § 2301, in turn, enumerates

---

above and beyond." SRF, Tab 1 at 7, 26-29.

[5] In contrast, a court issues a temporary restraining order, followed by a preliminary injunction, only in "extraordinary" circumstances and not as a matter of right. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); *see also* Fed. R. Civ. P. 65 (authorizing courts to issue temporary restraining orders and preliminary injunctions).

4

nine merit system principles for Federal personnel management. 5 U.S.C. § 2301(b)(1)-(9). Thus, to establish that an agency's action constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b)(12), the following three factors must be met: (1) the action constitutes a "personnel action" as defined in 5 U.S.C. § 2302(a); (2) the action violates a law, rule, or regulation; and (3) the violated law, rule, or regulation is one that implements or directly concerns the merit system principles. *See Special Counsel v. Harvey*, 28 M.S.P.R. 595, 599-600 (1984), *rev'd on other grounds sub nom.*, *Harvey v. Merit Systems Protection Board*, 802 F.2d 537 (D.C. Cir. 1986).[6]

Here, OSC states that the personnel actions at issue, i.e., the probationary terminations, violate the following laws and regulations governing RIFs and probationary terminations: (1) 5 U.S.C. § 3502; (2) 5 C.F.R. part 351; and (3) 5 C.F.R. § 315.801 et seq. SRF, Tab 1 at 12-13. OSC asserts that the identified statute and regulations concern five of the nine merit system principles. *Id.* at 13 (citing 5 U.S.C. § 2301(b)(1), (2), (5), (6), (8)(A)). These five identified principles are as follows:

- Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

- All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

---

[6] The Board's decision in *Harvey*, 28 M.S.P.R. at 599, references section 2302(b)(11). The Veterans Employment Opportunities Act of 1998 added a new prohibited personnel practice at 5 U.S.C. § 2302(b)(11), resulting in the redesignation of the former (b)(11) to (b)(12). *Blount v. Office of Personnel Management*, 87 M.S.P.R. 87, ¶ 2 n.2 (2000).

- The Federal work force should be used efficiently and effectively.

- Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

- Employees should be—

     (A) protected against arbitrary action, personal favoritism, or coercion for partisan political purposes.

According to OSC, the available evidence indicates that the agencies improperly used the relators' probationary status to accomplish RIFs without affording them the substantive rights and due process to which they are entitled during the same.  SRF, Tab 1 at 13.  OSC asserts that official directives, public statements, and the relators' termination notices signal that the relators were terminated not because they failed to meet expectations during their trial periods, but rather because of a purported lack of work, shortage of funds, and reorganization—reasons that require the use of RIF procedures.  *Id.* at 15-17. Accordingly, OSC avers that there are reasonable grounds to believe that the agencies improperly circumvented RIF regulations, which "provide for an orderly process of determining which employees are retained rather than separated and ensuring that those decisions are made according to merit-based factors."  *Id.* at 17.  Additionally, OSC asserts that two of the relators were in the competitive service; OSC avers that these two relators were therefore entitled to, but did not receive, written notice containing, at a minimum, "the agency's conclusions as to the inadequacies of [their] performance or conduct."  *Id.* at 19 (quoting 5 C.F.R. § 315.804(a)).

Particularly considering the deference that must be afforded to OSC at this initial stage, *see supra* p. 3, I find that there are reasonable grounds to believe that each of the six agencies engaged in a prohibited personnel practice under 5 U.S.C. § 2302(b)(12).  First, OSC reasonably alleges that each agency took a

personnel action under 5 U.S.C. § 2302(a) when it terminated these individuals. SRF, Tab 1 at 4, 12-13; *see Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 9 (recognizing that section 2302(a)(2)(A) defines "personnel action" as including, among other things, disciplinary or corrective actions, decisions regarding pay or benefits, and any other significant change in duties, responsibilities, or working conditions); *Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 10 (recognizing that a probationary termination is a personnel action under 5 U.S.C. § 2302(a)(2)(A)), *aff'd*, 157 F. App'x 260 (Fed. Cir. 2005).

Second, OSC identifies laws and regulations related to RIFs that it believes the agencies violated. SRF, Tab 1 at 12-13. In this regard, OSC asserts that the probationary terminations violated 5 U.S.C. § 3502 and 5 C.F.R. part 351 because the agencies misused the relators' probationary status to effect de facto RIFs without following the requisite RIF laws and regulations.[7] *Id.* at 13-18; *see Bielomaz v. Department of the Navy*, 86 M.S.P.R. 276, ¶ 11 (2000) (indicating that probationary employees are included in RIF procedures); *see also Coleman v. Federal Deposit Insurance Corporation*, 62 M.S.P.R. 187, 189-90 (1994) (holding that an appellant who lacked status to directly appeal his termination to the Board could nonetheless claim that his termination was part of an improper RIF).

Third, OSC argues that 5 U.S.C. § 3502 and 5 C.F.R. part 351 concern, among other merit system principles, 5 U.S.C. § 2301(b)(6) and 5 U.S.C. § 2301(b)(8)(A), which provide that employees should be retained on the basis of the adequacy of their performance, separated when they cannot or will not improve their performance to meet required standards, and protected against arbitrary action. SRF, Tab 1 at 13. The term "directly concerning" as used in 5 U.S.C. § 2302(b)(12) is undefined by statute or regulation, and the legislative

---

[7] As the legislative history of the Civil Service Reform Act explains, "[t]he probationary or trial period . . . is an extension of the examining process to determine an employee's ability to actually perform the duties of the position." S. Rep. No. 95-969, at 45 (1978).

history of the Civil Service Reform Act of 1978 provides no clear explanation as to the intended meaning of the term.  *See Harvey*, 28 M.S.P.R. at 602.  Absent a distinct definition in a statute or regulation, the words in a statute are assumed to carry their "ordinary, contemporary, common meaning."  *Dean v. Department of Agriculture*, 99 M.S.P.R. 533, ¶ 16 (2005) (citing *Perrin v. United States*, 444 U.S. 37, 42, (1979); *Union Pacific R.R. Co. v. Hall*, 91 U.S. 343, 347 (1875); *Butterbaugh v. Department of Justice*, 91 M.S.P.R. 490, ¶ 13 (2002), *rev'd on other grounds*, 336 F.3d 1332 (Fed. Cir. 2003)).  The primary dictionary definition of the adverb "directly" is "in a direct manner."  *Directly*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/directly (last visited Feb. 25, 2025); *see Maloney v. Executive Office of the President*, 2022 MSPB 26, ¶ 13 (explaining that, in interpreting the "ordinary, contemporary, common meaning" of words, the Board may refer to dictionary definitions).  The primary dictionary definition of the verb "concern" is "to relate to:  be about."  *Concern*, Merriam-Webster.com,   https://www.merriam-webster.com/dictionary/concern (last visited Feb. 25, 2025).  Thus, the ordinary meaning of "directly concerning" is to relate to something without an intervening element.  *Cf. United States v. Regan*, 221 F. Supp. 2d 666, 671 (E.D. Va. 2002) (applying dictionary definitions to interpret "directly concerned" in a separate statutory context and finding that the term means to relate to something in a straightforward manner).

Applying this meaning, and affording OSC the requisite deference at this stage, *see supra* p. 3, I find it is reasonable to posit that 5 U.S.C. § 3502 and 5 C.F.R. part 351, which prescribe RIF procedures that take into account efficiency or performance ratings, directly concern the merit system principle set forth in 5 U.S.C. § 2301(b)(6) and 5 U.S.C. § 2301(b)(8)(A).[8]  *See Wilburn v. Department of Transportation*, 757 F.2d 260, 262 (Fed. Cir. 1985) (explaining

---

[8] Because I find that OSC has made a sufficient showing regarding 5 U.S.C. § 2301(b)(6), (8)(A) vis-à-vis 5 U.S.C. § 3502 and 5 C.F.R. part 351, I need not address OSC's allegations regarding 5 C.F.R. § 315.801 et seq. or the three other identified merit system principles at this time.

8

that the RIF regulations reflect a congressional concern for fairness and limit an agency's discretion in filling a vacancy during a RIF); *cf. Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Nut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (finding that an agency action would be arbitrary and capricious under the Administrative Procedure Act when, among other things, it has entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to the evidence before the agency). This finding is consistent with the Board's longstanding application of the well-established maxim that a remedial statute should be broadly construed in favor of those whom it was meant to protect. *Willingham v. Department of the Navy*, 118 M.S.P.R. 21, ¶ 14 (2012); *see Dean*, 99 M.S.P.R. 533, ¶ 19 (applying this maxim in interpreting the term "relating to" for purposes of the Veterans Employment Opportunities Act of 1998).

Considering the deference that should be afforded to OSC in the context of an initial stay request and the assertions made in the instant stay request, I find that there are reasonable grounds to believe that the above-captioned agency terminated the relator during the relator's probationary period in violation of 5 U.S.C. § 2302(b)(12).

## ORDER

Based on the foregoing, granting OSC's stay request is appropriate. Accordingly, a 45-day stay of the relator's probationary termination is GRANTED. The stay shall be in effect from February 25, 2025, through and including April 10, 2025. It is further ORDERED as follows:

(1)    During the pendency of this stay, the relator shall be placed in the position the relator held prior to the probationary termination;

(2)    The agency shall not effect any changes in the relator's duties or responsibilities that are inconsistent with the relator's salary or

grade level, or impose on the relator any requirement which is not required of other employees of comparable position, salary, or grade level;

(3)    Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(4)    Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before March 26, 2025; and

(5)    Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board on or before April 2, 2025.

*Gina K. Grippando*

FOR THE BOARD:        _____
                      Gina K. Grippando
                      Clerk of the Board

Washington, D.C.