# EXHIBIT C

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| **U.S. OFFICE OF SPECIAL COUNSEL,** ) | |
| *ex rel.* ███ ) | |
| **Petitioner,** ) | **Docket No.** |
| ) | |
| **v.** ) | |
| ) | **Date:** February 28, 2025 |
| **DEPARTMENT OF AGRICULTURE,** ) | |
| **Respondent.** ) | |
| ) | |

**U.S. OFFICE OF SPECIAL COUNSEL'S**
**INITIAL REQUEST FOR STAY OF PERSONNEL ACTIONS**

The U.S. Office of Special Counsel (OSC) requests that the Merit Systems Protection

Board (Board) stay for 45 days the probationary termination of former federal employee ██,

hereinafter "Complainant," by the Department of Agriculture (USDA).[1]  *See* 5 U.S.C. §

1214(b)(1)(A)(i); 5 C.F.R. § 1201.134.  OSC further requests that the Board stay the terminations

of all other probationary employees that USDA has terminated since February 13, 2025 pursuant

to letters stating "The Agency finds, based on your performance, that you have not demonstrated

that your further employment at the Agency would be in the public interest" (hereinafter "mass

termination letters").[2]  OSC asks that this stay request be considered in light of the previously-

---

[1] To ensure compliance with the Board's procedural requirements, Complainant has consented to be identified in this stay request, but asks that the Board use a pseudonym in its decision and any other publicly-available document.  In consideration of this request, OSC has used Complainant's name in the caption, but otherwise refers to them by their initials and asks that the Board do the same.  Complainant is fully identified in the attached termination notice and declaration, which they provided to OSC in support of their prohibited personnel practice complaint.

[2] For purposes of this brief, OSC uses the term "probationary" and "probationer" to refer to both excepted and competitive service employees.

1

filed request to stay the probationary termination of former USDA employee Complainant █.
*See* Tab 1, CB-1208-25-0018-U-1.

OSC has reasonable grounds to believe that USDA engaged in prohibited personnel practices under 5 U.S.C. § 2302(b)(12) and 5 U.S.C. § 1216(a)(4) by terminating Complainant in violation of the federal laws and regulations governing probationary terminations and reductions in force (RIF). *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351; 5 C.F.R. § 315.801 *et seq*. OSC also has reasonable grounds to believe that USDA engaged in identical prohibited personnel practices against the other probationary employees that USDA has terminated since February 13, 2025, pursuant to the mass termination letters. As a result, OSC has an obligation to request relief from the Board on behalf of these employees. 5 U.S.C. § 1212(a) ("The Office of Special Counsel *shall*…protect employees…from prohibited personnel practices…and, where appropriate [] bring petitions for stays.") (emphasis added).

## INTRODUCTION

In accordance with its legal responsibility to safeguard the merit system, OSC seeks this stay because the probationary terminations at issue in this matter appear to have been effectuated in a manner inconsistent with federal personnel laws. In most cases, probationary employees in the competitive service may only be terminated if their performance or conduct demonstrates that they are unfit for federal employment. If agencies wish to terminate probationary employees not for performance or conduct, but as part of a general restructuring or downsizing, they must initiate a reduction in force (RIF) and follow the relevant procedures for that process.

As described below, the rules for probationary terminations and conducting RIFs are not technicalities. Rather, they implicate federal employees' substantive and procedural rights.

## STATEMENT OF FACTS

I.  **PREPARATIONS MADE TO REDUCE AND REORGANIZE THE FEDERAL WORKFORCE**

Between January 20 and February 11, 2025, President Trump and OPM issued executive orders and memoranda in connection with plans to reduce and reorganize the federal workforce. For example, on January 20, 2025, the President issued an Executive Order establishing the Department of Government Efficiency,[3] and OPM issued guidance on probationary periods, advising agencies that probationary periods are "an essential tool for agencies to assess employee performance and manage staffing levels," directing agencies to provide OPM with a list of all probationary employees, and instructing agencies to "promptly determine" whether probationary employees should be retained.[4]  On February 11, 2025, the President issued an Executive Order directing agency heads to "promptly undertake preparations to initiate large-scale reductions in force…" and to develop "[r]eorganization [p]lans."[5]  OSC's investigation indicates that, on February 12, 2025, OPM officials provided guidance to federal agency leaders on how to carry out probationary termination actions as part of the broader effort to restructure and downsize the federal workforce.[6]

---

[3] *See* EXEC. ORDER NO. 14158, *Establishing and Implementing the President's "Department of Government Efficiency,"* 90 Fed. Reg. 8441 (Jan. 20, 2025).

[4] *Guidance on Probationary Periods, Administrative Leave and Details*, U.S. OFF. OF PERSONNEL MGMT. (Jan. 20, 2025).

[5] EXEC. ORDER NO.14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025); *see* WHITE HOUSE, Fact Sheet: President Donald J. Trump Works to Remake America's Federal Workforce (Feb. 11, 2025) (explaining that DOGE will assist with "shrink[ing] the size of the federal workforce," "large-scale reductions in force," "reducing the size and scope of the federal government," and "shrink[ing] the administrative state.").

[6] While OPM has presented its various communications to agencies as "guidance," an as-yet unpublished ruling in the case of *American Federation of Government Employees v. Ezell*, Dkt No. 3:25-cv-01780-WHA (N.D. CA.) held that these communications instead amounted to *ultra vires* directives for agencies to terminate their probationary employees.  *See* Jared Serbu, *Federal judge invalidates OPM's directives to terminate federal probationary workers*, FEDERAL NEWS NETWORK (Feb. 27, 2025), https://federalnewsnetwork.com/workforce/2025/02/federal-judge-invalidates-opms-directives-to-terminate-federal-probationary-workers/.  Because the question does not bear directly on this stay request, OSC will adopt OPM's terminology at this time.

3

Through its investigation, OSC has obtained documents and interviewed multiple USDA personnel at relevant levels within that agency to gain a clear picture of how the probationary terminations at issue occurred.  This evidence shows that USDA conducted a mass termination of approximately 5,900 probationary employees without consideration of their individual performance or fitness for federal employment, but rather because it did not identify their positions as "mission-critical."[7]

## II.   USDA IMPLEMENTATION OF OPM'S GUIDANCE TO FEDERAL AGENCIES TO TERMINATE PROBATIONERS

As outlined below, OSC's investigation indicates that USDA received guidance from OPM about how to terminate probationary employees, then applied it to Complainant and nearly six thousand others by sending the mass termination letters.

### a.   OPM Guidance and Template

Documents that OSC obtained and interviews that OSC conducted with USDA officials confirmed that USDA relied heavily on OPM guidance in terminating its probationary employees.  For instance, OPM provided verbal guidance in a February 12, 2025 meeting of the Chief Human Capital Officer (CHCO) Council about terminating probationary employees and then emailed a termination letter template for agencies to use in effecting those terminations.  Ex. 4 (email with attachment).  In the evening of February 12, 2025 OPM emailed USDA and other agencies additional guidance for terminating probationary employees, stating:

> **Please partner with your CHCO to action those you know you wish to separate from [sic] by the end of the day tomorrow, 2/13/2025, using the attached template letter (modified to account for whether the employee is in the competitive or excepted service).**

---

[7] USDA officials told OSC that they did not set standardized criteria for assessing whether positions were mission-critical.  Regardless of the definition of the term and even to the extent USDA did such an assessment here, it does not obviate the need for RIF procedures.

4

Ex. 3 (email with attachment) (emphasis in original).  In this email, OPM specified that agencies

could exempt probationary employees that agencies had identified as "high-performing

employees in mission critical areas."  *Id.*

OPM reinforced the centrality of the "mission-critical" designation during a February 14,

2025 "Special Session" of the CHCO Council, convened to further discuss the probationary

terminations.  During that meeting, as summarized in an email it sent to agencies the same day,

OPM stated, "We have asked that you separate probationary employees that you have not

identified as mission-critical no later than end of the day Monday, 2/17."  Ex. 5 (email with

attachment).  OPM also told agencies that:

> An employee's performance must be measured in light of the existing needs and
> interests of government. OPM has emphasized that individual employee
> performance measurement should be "aligned with and support organizational
> goals" and "focus[] employee efforts on achieving organizational and group
> goals." An employee's performance must be viewed *through the current needs
> and best interest of the government, in light of the President's directive to
> dramatically reduce the size of the federal workforce*.

*Id*. (emphasis added).  OPM then cited 5 C.F.R. § 315.803 and told agencies that "OPM believes

'qualifications for continued employment' in the current context means that only the highest-

performing probationers in mission-critical areas should be retained."  *Id*.

  b.  *Complainant's Probationary Termination*

On February 13, 2025, one day after OPM provided its initial guidance and termination

template, USDA terminated Complainant, a GS-5 Forestry Technician in the competitive service

during his probationary period.  *See* Exs. 1-2 (Complainant's declaration and termination notice).

In his declaration, Complainant averred that he had consistently good performance, was never

counseled or disciplined, and his supervisor rated his performance as "fully successful."  Ex. 1.

Complainant's declaration and other evidence obtained by OSC indicate that Complainant's

supervisor was not consulted about his termination and was unaware that he was going to be terminated until just hours before Complainant received his letter, but would have recommended Complainant be retained.  *Id*.  Complainant received a termination letter signed by a Director of Human Resources Management, which specified his job title and the date he started working at USDA.  Ex. 2.  Although the letter stated that the termination was based on Complainant's "performance," it provided no explanation of how Complainant's performance was deficient or any other individualized analysis.  *See id*.

   c.  *Mass Termination of USDA Probationers*

   Evidence gathered by OSC indicates that the letter Complainant received is identical to the mass termination letters received by every other probationary employee that USDA terminated since February 13, 2025.  USDA officials testified that the agency created two templates, one for probationary employees in the competitive service and one for probationary employees in the excepted service, which it used to draft the mass termination letters it sent to Complainant and each of the nearly six thousand other probationary employees it has terminated since February 13, 2025.  See Exs. 6-7 (templates).  These templates were in turn based on the OPM template referenced above. Ex. 4.  Evidence gathered by OSC indicates that USDA officials understood OPM's February 12, 2025 email to be an instruction to begin terminating probationary employees who had not been identified as mission-critical.  USDA officials also took OPM's guidance to mean that the agency lacked discretion to retain probationary employees who did not hold mission-critical positions, regardless of their performance.

   OSC's investigation confirmed that, at a meeting of senior Human Resources (HR) officials on the morning of February 13, 2025, USDA's Acting Principal Deputy Assistant Secretary for Administration conveyed the instruction to the various USDA subcomponents to

begin terminating all non-mission-critical probationers, indicating that the terminations needed to be accomplished by the end of the day.  Each USDA subcomponent then began using the templates to draft individual termination letters to their probationary employees who had not been identified as mission-critical, a sample of which are attached.[8]  Ex. 8 (sample letters). Evidence obtained by OSC indicates that the list of employees identified as mission-critical was based on (though not identical to) the list of employees that USDA created in response to OPM's January 20, 2025, guidance.[9]  OSC has obtained evidence that, in all, USDA has terminated approximately 5,900 probationary employees since February 13, 2025.[10]

OSC's investigation confirmed that USDA made no attempt to assess the individual performance or conduct of any of these probationary employees before deciding whether to terminate them – the decision to retain a particular probationary employee depended entirely on whether their position was designated as mission-critical.  Whether USDA terminated each probationary employee therefore depended entirely on the nature of that employee's position, not on the adequacy of their performance or fitness for federal service.

## ARGUMENT

## I.    LEGAL STANDARD FOR STAY REQUESTS

OSC may request any member of the Board to order a stay of any personnel action for a period of 45 days if OSC determines that reasonable grounds exist to believe that a personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.  5 U.S.C.

---

[8] These letters are samples of the mass termination letters sent to probationary employees in each of USDA's mission areas except Food Safety – it appears that USDA may have retained all probationary employees in that area.

[9] OPM, Guidance on Probationary Periods, Administrative Leave and Details, *supra,* n.4.

[10] USDA officials interviewed by OSC explained that, as of the evening of February 18, 2025, the agency had terminated 5,950 probationary employees.  These officials noted that this number remains somewhat in flux due to corrections and changes to mission-critical designations.

§ 1214(b)(1)(A)(i).  Indeed, pursuant to 5 U.S.C. § 1212, OSC has a legal obligation to protect

federal employees from prohibited personnel practices and petition for a stay "where

appropriate."  *See* 5 U.S.C. § 1212(a)(2).

OSC may file a stay request after the effective date of a personnel action.  *Special*

*Counsel ex rel. Perfetto v. Dep't of Navy*, 83 M.S.P.R. 169, 173 (1999).  The Board member

"shall" grant the stay "unless the [Board] member determines that, under the facts and

circumstances involved, such a stay would not be appropriate."  5 U.S.C. § 1214(b)(1)(A)(ii).

In evaluating the sufficiency of a stay request, the Board will view the facts in the light

most favorable to a finding that the personnel action to be stayed is the "result of a prohibited

personnel practice."  *Special Counsel v. Dep't of Treasury*, 70 M.S.P.R. 578, 580 (1996) (quoting

*Special Counsel v. Dep't of Transportation*, 59 M.S.P.R. 552, 555 (1993)).  OSC's stay request

need merely fall within the "range of rationality" to be granted.  *Perfetto,* 83 M.S.P.R. at 173

(quoting *In re Kass*, 2 M.S.P.R. 79, 96 (1980) (interpreting the predecessor provision to 5 U.S.C.

§ 1214)).

II.    **OSC HAS REASONABLE GROUNDS TO BELIEVE THAT USDA'S**
       **TERMINATIONS OF COMPLAINANT AND OTHER PROBATIONARY**
       **EMPLOYEES VIOLATE 5 U.S.C. § 2302(B)(12) AND 5 U.S.C. § 1216(A)(4)**

Under 5 U.S.C. § 2302(b)(12), it is a prohibited personnel practice for an agency to take

or fail to take a personnel action where "the taking of or failure to take such action violates any

law, rule, or regulation implementing, or directly concerning, the merit system principles

contained in [5 U.S.C. § 2301]."  Complainant alleges that the probationary termination

described in this Initial Request for Stay of Personnel Actions (Stay Request) is a personnel

action, as defined at 5 U.S.C. § 2302(a)(2)(A), that violates 5 U.S.C. § 3502, 5 C.F.R. Part 351,

and 5 C.F.R. § 315.801 *et seq*. These statutes and regulations concern the following merit system principles:

- Selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills;

- All employees should receive fair and equitable treatment with proper regard for their constitutional rights;

- The Federal work force should be used efficiently and effectively;

- Employees should be retained on the basis of the adequacy of their performance; and

- Employees should be protected against arbitrary action.

*See* 5 U.S.C. §§ 2301(b)(1), (2), (5), (6), (8)(A).

In addition, OSC may investigate "activities prohibited by any civil service law, rule, or regulation . . . " under 5 U.S.C. § 1216(a)(4). *See Horner v. Merit Sys. Prot. Bd.* 815 F.2d 668, 676 (Fed. Cir. 1987) (concluding that this provision, then codified at 5 USC § 1206(e)(1)(D), supplements OSC's jurisdiction over prohibited personnel practices with the authority to investigate other personnel practices that may be prohibited by "any civil service law, rule, or regulation."). Section 1216 allows OSC to investigate and seek corrective action under section 1214 processes, "in the same way as if a prohibited personnel practice were involved." 5 U.S.C. § 1216(c). Unlike section 2302(b)(12), section 1216(a)(4) requires no showing that the investigated violation "implements or directly concerns" particular merit system principles. As set forth below, OSC has reasonable grounds to believe that the terminations of Complainant and all other USDA probationary employees terminated since February 13, 2025 pursuant to the mass termination letters violated 5 U.S.C. § 3502, 5 C.F.R. Part 351, and/or 5 C.F.R. § 315.801 *et seq*, and therefore constitute violations of sections 2302(b)(12) and 1216(a)(4).

A.    **USDA's Probationary Terminations Appear to Violate the RIF Statute and Regulations**

The available evidence indicates that USDA improperly used the probationary status of employees to accomplish a RIF without affording the employees the substantive rights and due process they are entitled to by law.[11]  Based on OSC's interviews of USDA officials, the language in the termination notices, and OPM's guidance, USDA's decision to terminate large numbers of probationers was to accomplish reorganizations and cost savings; in other words, a RIF.

Because 1) agencies are prohibited from circumventing the requirements set forth in the RIF statute and regulations, which apply equally to probationary employees, 2) the evidence indicates that USDA improperly terminated Complainant and other probationary employees without reference to those requirements, and 3) those actions denied Complainant and other probationary employees both substantive and procedural rights, OSC has reasonable grounds to conclude that USDA engaged in prohibited personnel practices.

1.    *Agencies are Prohibited from Circumventing RIF Requirements*

Agencies must follow the RIF statute and regulations when the employee's release is required for reasons including lack of work, shortage of funds, and reorganization.  *See* 5 C.F.R. § 351.201.  The regulations define a "reorganization" as "the planned elimination, addition, or redistribution of functions or duties in an organization."  5 C.F.R. § 351.203.  The Federal Circuit has "defined a 'reduction in force' as an 'administrative procedure' by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions."  *Tippins v. U.S.*,

---

[11] *See* U.S. OFF. OF PERSONNEL MGMT., *Workforce Reshaping Operations Handbook A Guide for Agency Management and Human Resource Offices* (2017), https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force/workforce_reshaping/.

10

93 F.4th 1370, 1375 (Fed. Cir. 2024) (quoting *Welch v. Department of the Army*, 323 F.3d 1042, 1046 (Fed. Cir. 2003)).  OPM's website similarly explains that, "An agency is required to use the RIF procedures when an employee is faced with separation or downgrading for a reason such as reorganization, lack of work, [or] shortage of funds . . . ."[12]

Each agency has the right to decide whether a RIF is necessary and when the RIF will take place.  However, agencies do not have discretion to bypass RIF procedures when they are reorganizing or reducing the size of components based on lack of work or budgetary concerns. *See James v. Von Zemenszky,* 284 F.3d 1310, 1321 (Fed. Cir. 2002) (holding that the VA did not have "the authority to implement a system for implementing RIFs contrary to the title 5 RIF framework mandated by Congress").  Importantly, probationary employees are not excluded from RIF procedures.  *See* 5 C.F.R. § 351.202.  It is an agency's burden to prove before the Board that its decision not to use RIF procedures complied with the regulations.  *See Carter v. Small Bus. Admin.*, 23 M.S.P.R. 309, 311-12 (1984) (citing *Losure v. Interstate. Com. Comm'n*, 2 M.S.P.R. 361, 365-66 (1980)).

Agencies cannot avoid following the RIF requirements when the purpose of the action is to address a shortage of funds or a reorganization.  *See McClure v. Fed. Emergency Mgmt. Agency*, 32 M.S.P.R. 672, 676 (1987); *see also Moody v. Dep't of Justice*, 2009 MSPB LEXIS 1917, *7 (April 2, 2009).

### 2.    *USDA Likely Cannot Meet its Burden to Show that RIFs Were Not Required to Terminate the Probationers*

Based on the evidence OSC has reviewed, including official guidance, documents and interviews with USDA officials, public statements, and the mass termination notices USDA has

---

[12] *Reductions in Force*, U.S. OFF. OF PERSONNEL MGMT., https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force/ (last visited Feb. 17, 2025).

issued to Complainant and other probationary employees since February 13, OSC has reasonable grounds to believe that USDA terminated probationary employees not to eliminate poor performers but rather as part of a reorganization, which requires the use of RIF procedures. *See* 5 C.F.R. § 351.201. Specifically, the evidence shows that OPM's guidance led USDA to terminate all probationary employees that USDA had not designated as "mission-critical," demonstrating that these terminations were actually a "planned elimination . . . of [non-mission-critical] functions or duties." 5 C.F.R. § 351.203. While OPM's guidance indicated that agencies should terminate probationary employees based on their "performance," it explained that in this context "performance" meant "the current needs and best interest of the government, in light of the President's directive to dramatically reduce the size of the federal workforce."[13] Ex. 5. That is, OPM's guidance specified that agencies should terminate probationary employees based not on their individual fitness for federal service, but rather because they were performing functions that the government wished to eliminate.

That these probationary terminations were actually part of a reorganization of certain functions is further highlighted by the February 11, 2025 Executive Order that directed agencies to start planning for RIFs.[14] The Executive Order specified that these RIFs would prioritize eliminating "offices that perform *functions* not mandated by statute or other law" and would exclude "*functions* related to public safety, immigration enforcement, or law enforcement." *Id.* (emphases added). Two days later, an OPM spokesperson described the mass terminations as

---

[13] OSC is unaware of any statute, regulation, or case law supporting this interpretation of the meaning of the term "performance."

[14] EXEC. ORDER NO.14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, *supra* at n.5 (emphasis added).

actions "in support of the President's broader efforts to *restructure* and *streamline* the federal government."[15]

These public statements and OPM's guidance indicate that USDA terminated Complainant and other probationary employees as part of a restructuring plan to eliminate positions that are not mission critical. Eliminating positions for this reason requires compliance with RIF regulations. *See McClure, supra,* 32 M.S.P.R. at 676. Based on the available evidence, OSC therefore has reasonable grounds to believe that USDA improperly circumvented RIF regulations by terminating Complainant and other probationary employees on or after February 13 *en masse* without regard to each employee's individual fitness for government service and for the purpose of restructuring government agencies and reducing costs.

### 3. Failing to Use RIF Requirements Deprives Employees of Substantive and Procedural Rights

USDA's failure to apply RIF regulations deprived Complainant, and the other probationary employees terminated since February 13, 2025 pursuant to the mass termination letters, of substantive rights. Proper application of RIF regulations could allow some probationers to keep their jobs or be reassigned to new positions. At a minimum, the regulations allow them to remain employed during the RIF process. RIF regulations provide for an orderly process of determining which employees are retained rather than separated and ensuring that those decisions are made according to merit-based factors. *See* 5 U.S.C. § 3502; 5 C.F.R. §§ 351.501-506. The law requires that employees with better performance ratings are retained over other competing employees in their retention groups. 5 U.S.C. § 3502. For both excepted and

---

[15] Rebecca Beitsch, *OPM Directs Agencies to Fire Government Workers Still on Probation*, THE HILL (Feb. 13, 2025), https://thehill.com/homenews/administration/5144113-federal-probationary-employees-fired/ (emphasis added).

competitive service employees, probationary employees are placed in the second of three

retention groups.  *See* 5 C.F.R. §§ 351.501-502.  Thus, it is not a foregone conclusion that

Complainant and other probationary employees terminated since February 13 would be separated

during a RIF.

      In addition to the substantive rights to be considered for retaining their position or being

reassigned to another position, the RIF regulations require agencies to provide employees with

60 days of notice and to keep employees in a paid status during that time if possible.  *See* 5

C.F.R. §§ 351.803; 351.806 (specifying that agencies may only remove employees from paid

status "[w]hen in an emergency the agency lacks work or funds for all or part of the notice

period").  The notice is also required to provide employees with information about their right to

reemployment and career transition assistance.  *See* 5 C.F.R. § 351.803.

      The regulations also provide employees subject to a RIF with notice and the right to

appeal their termination, demotion, or more than 30-day furlough to the Board.  *See* 5 C.F.R. §

351.901.  The Board's jurisdiction to hear an appeal of an action taken pursuant to a RIF or that

should have been conducted pursuant to a RIF is not dependent on the individual's probationary

status or on the length of the individual's current continuous service.  *Bielomaz v. Dep't of Navy*,

86 M.S.P.R. 276, 280 (2000).

      Accordingly, USDA's actions appear to have deprived Complainant and all other

probationary employees that USDA terminated since February 13, 2025 pursuant to the mass

termination letters of their entitlement to some additional period of employment, compensation,

benefits, career transition assistance information, possible accrual of tenure, as well as due process rights.[16]

### B.    USDA's Terminations of Complainant and other Competitive Service Employees Appear to Violate Probationary Employee Regulations

The Civil Service Reform Act ("CSRA") provides that individuals hired into the competitive service must serve a one-year probationary or trial period.[17]  5 C.F.R. § 315.801-802. For these employees, the regulations promulgated by OPM state explicitly that agencies "*shall utilize the probationary period as fully as possible to determine the fitness of the employee* and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."  5 C.F.R. § 315.803 (emphasis added).  In short, to terminate a probationary employee, an agency "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job."  *McGuffin v. SSA*, 942 F.3d 1099, 1102 (Fed. Cir. 2019) (citing *Shaw v. United States*, 622 F.2d 520, 544 (Ct. Cl. 1980); *see also Perlongo v. United States*, 215 Ct. Cl. 982, 983 (1977).

Where an employee's "work performance or conduct during [his probationary] period fails to demonstrate his fitness or his qualifications for continued employment," an agency may terminate the employee by notifying him "in writing as to why he is being separated and the

---

[16] Board precedent is consistent that the remedy to improper circumvention of RIF regulations is to cancel the action the agency took.  *See, e.g., Williams v. Dep't of Army*, 49 M.S.P.R. 405, 414 (1991).

[17] The use of a probationary period to assess new employees has been an integral part of the civil service for over 100 years.  Congress established a probationary period in the 1883 Pendleton Act. *See* 22 Stat. 404, ch. 27, § 2(2)4 (amended 1978); *see also INS v. FLRA*, 709 F.2d 724, 725 n.1 (D.C. Cir. 1983) (explaining the Pendleton Act's probationary period).  Congress reaffirmed the importance of the probationary period with the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101–7135, which expanded the probationary period beyond new employees to existing employees who are appointed to managerial and supervisory positions.  *Compare* 5 U.S.C. § 3321 (1976) (establishing a "period of probation before an appointment in the competitive service becomes absolute") *with* 5 U.S.C. § 3321(a) (1982) (authorizing a probationary period for new employees and appointments to managerial and supervisory positions); *see also Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 737 F.3d 273, 276 (4th Cir. 2013).

effective date of the action." 5 C.F.R. § 315.804(a). This notice "shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id*.

Probationary employees have only limited rights to challenge personnel actions taken against them. 5 C.F.R. § 315.806(c). However, while the threshold for terminating a probationary employee is significantly lower than for a tenured employee, it is not zero – probationary employees cannot be terminated "at will." Agencies must inform probationary employees of the specific reasons for their termination, which necessarily requires agencies to conduct an individualized assessment of their performance and conduct. This requirement is not a simple bureaucratic technicality – compelling agencies to assess the specific fitness of each employee prior to terminating them ensures that outstanding employees are not arbitrarily lost and that terminations are truly in the best interests of the federal service and consistent with merit system principles.

For these reasons, terminating probationary employees in the competitive service for reasons other than their individual fitness for federal employment violates 5 C.F.R. § 315.801 *et seq*., and thus violates section 1216(a)(4). As these regulations and statutes implement or directly concern the merit system principles described in 5 U.S.C. §§ 2301(b)(1), (5), (6), and (8)(A), violating them also constitutes a prohibited personnel practice under section 2302(b)(12).

Complainant was a probationary employee in the competitive service and OSC has reasonable grounds to believe that he was terminated in violation of 5 C.F.R. § 315.801 *et seq*. As above, each probationary employee USDA has terminated since February 13, 2025, including Complainant, received a virtually identical mass termination letter that stated "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest" but did not reference any specific performance or

16

conduct issues. *See* Ex. 2. Evidence gathered by OSC indicates that Complainant had no performance or conduct issues and, in fact, that his supervisor believed Complainant was an excellent performer who should have been retained. However, Complainant's supervisor was not consulted or even aware of Complainant's termination until just hours before it happened. This evidence, combined with the evidence discussed above that USDA terminated probationary employees on the basis of whether their positions were identified as mission-critical, gives OSC reasonable grounds to believe that USDA did not conduct any individualized assessments of its employees. Rather, USDA seems to have issued form letters to terminate Complainant and other probationary employees *en masse* to accomplish organizational objectives and not due to the performance or conduct of individual probationers.

## IV.    A 45-DAY STAY OF COMPLAINANTS' TERMINATIONS IS APPROPRIATE

"OSC's stay request need merely fall within the "range of rationality" to be granted, and the facts must be reviewed in the light which is most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed." *Special Counsel ex rel. Aran v. Dep't of Homeland Sec*, 115 MSPR 6, ¶ 9 (2010). The Board has already held that reasonable grounds exist to believe that USDA violated 5 U.S.C. § 2302(b)(12) when it terminated one probationary employee who received the same mass termination letter as Complainant. *See* Tab 2, CB-1208-25-0018-U-1. As set forth above, OSC has reasonable grounds to believe that the same is true for each of the approximately 5,900 other probationary employees who received the same mass termination letter since February 13, 2025.

Specifically, OSC has reasonable grounds to believe that USDA violated 5 U.S.C. § 2302(b)(12) and 5 U.S.C. § 1216(a)(4) because 1) USDA's termination of Complainant and every other probationary employee since February 13, 2025, pursuant to the mass termination

letters failed to comply with applicable RIF statutes and regulations; and 2) USDA's termination

of Complainant and every other probationary employee in the competitive service since February

13, 2025, pursuant to the mass termination letters did not comply with 5 C.F.R. 315.804.  *See* 5

U.S.C. § 1214(b)(1)(A)(i).

 A stay of these terminations will allow OSC to further investigate Complainant's

allegations and USDA's systemic action to terminate probationary employees to minimize the

adverse consequences of the apparent prohibited personnel practice.  *See Special Counsel v.*

*Dep't of Veterans Affairs*, 60 M.S.P.R. 40, 41 (1993) ("[S]tays are an effective means of

minimizing the adverse consequences of a prohibited personnel practice, of providing time for a

full investigation and for the settlement of controversies, and of safeguarding the status quo

while interested parties prepare their cases for presentation to the MSPB." (quoting H. Rep. 100-

274 (1987)).  Here, the consequences for the terminated probationary employees are grave,

including loss of pay and benefits, loss of their federal careers, and deprivation of their legal

rights.

 A broad stay in this case is appropriate.  OSC's authority extends to the investigation of

systemic merit systems abuses, and the Board may remedy the same.  For example, section 1214

gives the Board "the power to address systemic abuses and fashion whatever remedy and

appropriate action need be taken." *Special Counsel v. EPA*, 79 M.S.P.R. 542, 552 (1998).  The

U.S. Court of Appeals for the District of Columbia Circuit has similarly affirmed that OSC

should address systemic abuses because OSC is "fundamentally concerned with the integrity of

the merit system." *Frazier v. Merit Systems Protection Bd.,* 672 F.2d 150, 163 (D.C. Cir. 1982).

The DC Circuit justified this claim by referencing the Senate Report on the Civil Service Reform

Act of 1978:

> The Special Counsel should not passively await employee complaints, but rather, vigorously pursue merit system abuses on a *systematic basis*. He should seek action by the Merit Board to eliminate both individual instances of merit abuse and *patterns of prohibited personnel practices*.

*Id.* (quoting S. Rep. No. 95-969, at 32 (1978)) (emphasis added).

Section 1216 was enacted specifically so that OSC could address apparent large-scale violations of civil service law like those described here. 5 U.S.C. § 1216(a)(4); 135 CONG. REC. S2779-01, (Whistleblower Protection Act of 1989, Joint Explanatory Statement on S. 508) (Mar. 16, 1989) ("The authority of the Special Counsel to investigate allegations under 1216(a)(4) is meant to cover *major abuses of the civil service processes . . . .*") (emphasis added).

While section 1216 complements OSC's investigative authority in section 1214, the investigation itself proceeds in the same manner under both statutes, including seeking a stay. 5 U.S.C. § 1216(c) (for allegations concerning a matter under section 1216(a)(4), "the Special Counsel may investigate and seek corrective action under section 1214 . . . in the same way as if a prohibited personnel practice were involved"). Section 1214(b) clearly gives OSC authority to seek a stay for potential individual violations of 5 C.F.R. § 315.804 and RIF laws under section 2302(b)(12), so section 1216(c) likewise gives OSC authority to seek a stay of the systemic violation of those same laws.[18]

In furtherance of OSC's essential mission to protect the merit system from widespread abuse, OSC asks that the Board stay the probationary termination of each USDA probationary employee who was terminated pursuant to a mass termination letter since February 13, 2025.

---

[18] This reading is consistent with the Civil Service Reform Act's (CSRA) broad administrative scheme. Courts routinely dismiss cases related to federal employment as precluded by the CSRA, at times specifically directing federal employees instead to OSC. *See, e.g., Rydie v. Biden*, No. 21-2359, 2022 U.S. App. LEXIS 10589, at •18–19 (4th Cir. Apr.19, 2022) (dismissing federal employees' challenges to vaccination requirements because the district court lacked jurisdiction due to the CRSA); *Payne v. Biden*, 62 F.4th 598 (D.C. Cir. 2023), *vacated as moot,*144 S. Ct. 480 (2023) (same). Because probationary federal employees are channeled into the CSRA's administrative scheme, that scheme should be interpreted broadly to give OSC and the Board the appropriate tools to address their claims.

19

## REQUEST FOR RELIEF

OSC requests that a member of the Board:

1.  Order USDA to stay, for a period of 45 days, Complainant's probationary termination and
    return Complainant to full pay and duty status until the stay expires or is otherwise lifted.

2.  Further order USDA to stay, for a period of 45 days, the probationary terminations of all
    other probationary employees that it has terminated since February 13, 2025 pursuant to
    letters stating "The Agency finds, based on your performance, that you have not
    demonstrated that your further employment at the Agency would be in the public
    interest."

Respectfully submitted,

_Hampton Dellinger_

_____

Hampton Dellinger
Special Counsel


U.S. Office of Special Counsel
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505