# EXHIBIT D

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. JOHN DOE,
Petitioner,

v.

DEPARTMENT OF AGRICULTURE,
Agency.

DOCKET NUMBER
CB-1208-25-0020-U-1

DATE:  March 5, 2025

# THIS STAY ORDER IS NONPRECEDENTIAL[1]

Hampton Dellinger, Esquire, and Erik Snyder, Esquire, Washington, D.C.,
  for the petitioner.

Bruce D. Fong, Esquire, Oakland, California, for the petitioner.

John Doe, pro se.

Steven C. Brammer, Esquire, and Domiento C.R. Hill, Esquire,
  Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Member

### ORDER ON STAY REQUEST

Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay for 45 days the probationary termination of John Doe,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the above captioned former employee/relator, and the probationary terminations of numerous other individuals who were employed by the agency and terminated during their probationary periods since February 13, 2025, based on letters stating: "The [a]gency finds, based on your performance, that you have not demonstrated that your further employment at the [a]gency would be in the public interest." OSC submits that a 45-day stay will "minimize the adverse consequences of the apparent prohibited personnel practice" while it further investigates these allegations and the agency's "systemic action to terminate probationary employees." *Special Counsel ex rel. John Doe v. Department of Agriculture*, MSPB Docket No. CB-1208-25-0020-U-1, Stay Request File (SRF), Tab 1 at 21.

For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

On February 28, 2025, OSC filed a stay request on behalf of Mr. Doe, in which it states that it has reasonable grounds to believe that the agency engaged in prohibited personnel practices under, among other things, 5 U.S.C. § 2302(b)(12),[2] by terminating him in violation of the Federal laws and regulations governing reductions-in-force (RIFs) and probationary terminations. SRF, Tab 1 at 4-5.[3]

---

[2] Because I find that OSC has reasonable grounds to believe that the agency committed a prohibited personnel practice pursuant to 5 U.S.C. § 2302(b)(12) when it terminated Mr. Doe and the other former agency employees during their probationary periods, I need not address OSC's allegations and arguments regarding 5 U.S.C. § 1216(a)(4) at this time.

[3] The agency has filed an opposition to the stay request, and OSC has filed a reply. SRF, Tabs 2-3. I do not consider these additional submissions. The statute at 5 U.S.C. § 1214(b)(1)(a)(iii), by mandating that a Board Member decide the stay request within 3 working days, does not provide an opportunity for agency comment on an initial stay request. *Special Counsel v. Department of Transportation*, 59 M.S.P.R. 556, 558 (1993); *Special Counsel ex rel. Schwarz v. Department of the Navy*, MSPB Docket No. CB-1208-17-0022-U-2, Order, ¶ 7 (Jul. 25, 2017) (stating that the purpose of the stay is to maintain the status quo for a finite period of time, and consistent with that purpose, Congress gave the agency no right to respond to OSC stay requests). Indeed, in contrast to the procedures for an initial stay request described in 5 U.S.C. § 1214(b)(1)(A), which afford no agency comment, the procedures in section 1214(b)(1)(C) explicitly provide for an agency comment on a stay extension request.

OSC also filed the stay request on behalf of "all other probationary employees that [the agency] has terminated since February 13, 2025," pursuant to letters stating: "The [a]gency finds, based on your performance, that you have not demonstrated that your further employment at the [a]gency would be in the public interest." *Id.* at 4. OSC asserts that it has reasonable grounds to believe that the agency engaged in prohibited personnel practices against Mr. Doe and the other probationary employees who were terminated since February 13, 2025, pursuant to these mass termination letters. *Id.* at 5.

OSC alleges that, on February 13, 2025, the agency terminated Mr. Doe, a GS-5 Forestry Technician in the competitive service, during his probationary period. *Id.* at 8. With its stay request, OSC provides a copy of Mr. Doe's termination letter and a declaration, made under penalty of perjury, from Mr. Doe attesting to the circumstances surrounding his termination. *Id.* at 8-9, 26-28. In Mr. Doe's declaration, he states that he "received only positive feedback about [his] performance," he was "never counseled or disciplined and was given no indication that [he] had any performance or conduct deficiencies," and he received a "Fully Successful" performance appraisal on January 15, 2025. *Id.* at 26. OSC also asserts that Mr. Doe's declaration and other evidence obtained by OSC indicate that Mr. Doe's supervisor was not consulted about his termination and was unaware that he was going to be terminated until just hours before he received his letter but would have recommended that he be retained. *Id.* at 8-9. OSC further asserts that Mr. Doe received a termination letter signed by a Director of Human Resources Management, which specified his job title and the date that he started working at the agency. *Id.* at 9, 27. OSC asserts that the letter stated that termination was based on Mr. Doe's "performance," but it provided no explanation of how his performance was deficient or any other individualized analysis. *Id.* OSC also asserts that it gathered evidence indicating that the letter Mr. Doe received was identical to the mass termination letters received by every other probationary employee whom the agency has terminated since February 13, 2025.

4

*Id.* at 9. OSC provides with its stay request a "sample" of 29 other probationary termination letters.[4] *Id.* at 10 n.8, 47-105.

## ANALYSIS

Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC "may request any member of the Merit Systems Protection Board to order a stay of any personnel action for 45 days if [OSC] determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice." Such a request "shall" be granted "unless the [Board] member determines that, under the facts and circumstances involved, such a stay would not be appropriate." 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed. *Special Counsel ex rel. Tines v. Department of Veterans Affairs*, 98 M.S.P.R. 510, ¶ 5 (2005). Deference is given to OSC's initial determination, and a stay will be denied only when the asserted facts and circumstances appear to make the stay request inherently unreasonable. *E.g.*, *Special Counsel v. Department of Veterans Affairs*, 50 M.S.P.R. 229, 231 (1991).

At issue in the instant stay request is 5 U.S.C. § 2302(b)(12), which provides that it is a prohibited personnel practice to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]." 5 U.S.C. § 2301, in turn, enumerates nine merit system principles for Federal personnel management. 5 U.S.C. § 2301(b)(1)-(9). Thus, to establish that an agency's action constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b)(12), the following three factors must be met: (1) the action constitutes a "personnel action" as defined in 5 U.S.C. § 2302(a); (2) the action violates a law, rule, or regulation; and (3) the violated law, rule, or

---

[4] The names of the individuals who were terminated were redacted from these letters.

regulation is one that implements or directly concerns the merit system principles. *See Special Counsel v. Harvey*, 28 M.S.P.R. 595, 599-600 (1984), *rev'd on other grounds sub nom.*, *Harvey v. Merit Systems Protection Board*, 802 F.2d 537 (D.C. Cir. 1986).[5]

Here, OSC states that the personnel actions at issue, i.e., the probationary terminations, violate the following laws and regulations governing RIFs and probationary terminations: (1) 5 U.S.C. § 3502; (2) 5 C.F.R. part 351; and (3) 5 C.F.R. § 315.801 et seq. SRF, Tab 1 at 11-12. OSC asserts that the identified statute and regulations concern five of the nine merit system principles. *Id.* at 12 (citing 5 U.S.C. § 2301(b)(1), (2), (5), (6), (8)(A)). These five identified principles are as follows:

- Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

- All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

- The Federal work force should be used efficiently and effectively.

- Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

- Employees should be—

---

[5] The Board's decision in *Harvey*, 28 M.S.P.R. at 599, references section 2302(b)(11). The Veterans Employment Opportunities Act of 1998 added a new prohibited personnel practice at 5 U.S.C. § 2302(b)(11), resulting in the redesignation of the former (b)(11) to (b)(12). *Blount v. Office of Personnel Management*, 87 M.S.P.R. 87, ¶ 2 n.2 (2000).

(A) protected against arbitrary action, personal favoritism, or coercion for partisan political purposes.

5 U.S.C. § 2301(b)(1), (2), (5), (6), (8)(A).   OSC asserts that agencies are prohibited from circumventing the requirements as set forth in the RIF statute and regulations, which apply equally to probationary employees, the evidence indicates that the agency improperly terminated Mr. Doe and the other probationary employees without reference to those rights, and the agency's actions denied Mr. Doe and the other probationary employees the substantive and procedural rights to which they are entitled under RIF procedures.  SRF, Tab 1 at 13.

    In pertinent part, OSC asserts that, based on the evidence it has reviewed, including guidance from the Office of Personnel Management (OPM), documents and interviews with agency officials, public statements, and the "mass termination notices" that were issued to Mr. Doe and the other probationary employees since February 13, 2025, it has reasonable grounds to believe that the agency terminated probationary employees not to eliminate poor performers, but instead as part of a reorganization, which required the use of RIF procedures.  *Id.* at 14-15 (citing 5 C.F.R. § 351.201).  Specifically, OSC asserts that OPM guidance led the agency to terminate all probationary employees that it had not designated as "mission critical," which demonstrated that these terminations were actually a "planned elimination . . . of [non-mission-critical] functions or duties."  *Id.* at 15 (citing 5 C.F.R. § 351.203).  OSC also asserts that OPM's guidance indicated that the agency should terminate probationary employees based on their "performance," but it explained that "performance" in this context meant "the current needs and best interest of the [G]overnment, in light of the President's directive to dramatically reduce the size of the [F]ederal workforce."  *Id.* (citing Exhibit 5).  OSC further asserts that the evidence indicates that Mr. Doe and the other probationary employees were terminated not based on their individual fitness for Federal service, but rather because they were performing functions that the Government wished to eliminate.  *Id.*   Finally, OSC asserts that the conclusion that these

probationary terminations were part of a reorganization is highlighted by a February 11, 2025 Executive Order, which directed agencies to start planning for RIFs, and prioritized eliminating "offices that perform *functions* not mandated by statute or other law" and excluded "*functions* related to public safety, immigration enforcement, or law enforcement." *Id.* at 15 (emphasis in original).

OSC avers that this evidence indicates that the agency terminated Mr. Doe and the other probationary employees as part of a restructuring plan to eliminate positions that are not mission critical, and eliminating positions for this reason required compliance with RIF regulations. *Id.* at 16. Accordingly, OSC avers that there are reasonable grounds to believe that the agency improperly circumvented RIF regulations, which provide for an orderly process of determining which employees are retained, rather than separated, and ensuring that those decisions are made according to merit-based factors. *Id.* OSC asserts in this regard that proper application of RIF regulations could allow some probationers to keep their jobs or be reassigned to new positions, and the agency's failure to follow RIF procedures deprived Mr. Doe and the other probationary employees of an additional period of employment, compensation, benefits, career transition assistance information, possible accrual of tenure, as well as due process rights. *Id.* at 16-18.

Particularly considering the deference that must be afforded to OSC at this initial stage, *see supra* pp. 4-5, I find that there are reasonable grounds to believe that the agency engaged in a prohibited personnel practice under 5 U.S.C. § 2302(b)(12). First, OSC reasonably alleges that the agency took a personnel action under 5 U.S.C. § 2302(a) when it terminated Mr. Doe and other probationary employees. SRF, Tab 1 at 11; *see Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 10 (recognizing that a probationary termination is a personnel action under 5 U.S.C. § 2302(a)(2)(A)), *aff'd*, 157 F. App'x 260 (Fed. Cir. 2005); *see also Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 9 (recognizing that section 2302(a)(2)(A) defines "personnel action" as including, among other things,

disciplinary or corrective actions, decisions regarding pay or benefits, and any other significant change in duties, responsibilities, or working conditions).

Second, OSC identifies laws and regulations related to RIFs that it believes the agency violated.  SRF, Tab 1 at 11.  In this regard, OSC asserts that the probationary terminations violated 5 U.S.C. § 3502 and 5 C.F.R. part 351 because, given the real reason for these terminations, *i.e.*, the elimination of non-mission-critical positions, the agency was required to follow RIF laws and regulations.  *Id.* at 13-18; *see Bielomaz v. Department of the Navy*, 86 M.S.P.R. 276, ¶ 11 (2000) (indicating that probationary employees are included in RIF procedures); *Coleman v. Federal Deposit Insurance Corporation*, 62 M.S.P.R. 187, 189-90 (1994) (holding that an appellant who lacked status to directly appeal his termination to the Board could nonetheless claim that his termination was part of an improper RIF); *see also Cox v. Tennessee Valley Authority*, 41 M.S.P.R. 686, 689 (1989) (concluding that the agency "was required to invoke RIF procedures" when it released a competing employee from his competitive level when the release was required because of a reorganization[6]); *Perlman v. Department of the Army*, 23 M.S.P.R. 125, 126-27 (1984) (noting the agency admitted that the removal was not based upon Mr. Perlman personally or the performance of his duties, concluding that the agency should have, but failed to, afford him any procedural or substantive RIF rights when it effected his removal as part of a reorganization, and ordering the agency to cancel the removal action and provide him with back pay); 5 C.F.R. § 351.201(a)(2) (stating, in relevant part, that "[e]ach agency *shall follow* this part when it releases a competing employee from his or her competitive level . . . when the release is required because of . . . [a] reorganization.") (emphasis supplied).

Third, OSC argues that 5 U.S.C. § 3502 and 5 C.F.R. part 351 concern, among other merit system principles, 5 U.S.C. § 2301(b)(6) and 5 U.S.C.

---

[6] Reorganization means the "planned elimination, addition, or redistribution of functions or duties in an organization."  5 C.F.R. § 351.203.

§ 2301(b)(8)(A), which provide that employees should be retained on the basis of the adequacy of their performance, separated when they cannot or will not improve their performance to meet required standards, and protected against arbitrary action.[7]  SRF, Tab 1 at 12.  The term "directly concerning" as used in 5 U.S.C. § 2302(b)(12) is undefined by statute or regulation, and the legislative history of the Civil Service Reform Act of 1978 provides no clear explanation as to the intended meaning of the term.  *See Harvey*, 28 M.S.P.R. at 602.  Absent a distinct definition in a statute or regulation, the words in a statute are assumed to carry their "ordinary, contemporary, common meaning." *Dean v. Department of Agriculture*, 99 M.S.P.R. 533, ¶ 16 (2005) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979); *Union Pacific R.R. Co. v. Hall*, 91 U.S. 343, 347 (1875); *Butterbaugh v. Department of Justice*, 91 M.S.P.R. 490, ¶ 13 (2002), *rev'd on other grounds*, 336 F.3d 1332 (Fed. Cir. 2003)).  The primary dictionary definition of the adverb "directly" is "in a direct manner."  *Directly*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/directly (last visited Mar. 5, 2025); *see Maloney v. Executive Office of the President*, 2022 MSPB 26, ¶ 13 (explaining that, in interpreting the "ordinary, contemporary, common meaning" of words, the Board may refer to dictionary definitions).  The primary dictionary definition of the verb "concern" is "to relate to: be about."  *Concern*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/concern (last visited Mar. 5, 2025). Thus, the ordinary meaning of "directly concerning" is to relate to something without an intervening element.  *Cf. United States v. Regan*, 221 F. Supp. 2d 666, 671 (E.D. Va. 2002) (applying dictionary definitions to interpret "directly concerned" in a separate statutory context and finding that the term means to relate to something in a straightforward manner).

---

[7] As the legislative history of the Civil Service Reform Act explains, "[t]he probationary or trial period . . . is an extension of the examining process to determine an employee's ability to actually perform the duties of the position."  S. Rep. No. 95-969, at 45 (1978).

Applying this meaning, and affording OSC the requisite discretion at this stage, *see supra* pp. 4-5, I find it reasonable to posit that 5 U.S.C. § 3502 and 5 C.F.R. part 351, which prescribe RIF procedures that take into account efficiency or performance ratings, directly concern the merit system principle set forth in 5 U.S.C. § 2301(b)(6) and 5 U.S.C. § 2301(b)(8)(A).[8]  *See Wilburn v. Department of Transportation*, 757 F.2d 260, 262 (Fed. Cir. 1985) (explaining that the RIF regulations reflect a congressional concern for fairness and limit an agency's discretion in filling a vacancy during a RIF); *cf. Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Nut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (finding that an agency action would be arbitrary and capricious under the Administrative Procedure Act when, among other things, it has entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to the evidence before the agency).  This finding is consistent with the Board's longstanding application of the well-established maxim that a remedial statute should be broadly construed in favor of those whom it was meant to protect. *Willingham v. Department of the Navy*, 118 M.S.P.R. 21, ¶ 14 (2012); *see Dean*, 99 M.S.P.R. 533, ¶ 19 (applying this maxim in interpreting the term "relating to" for purposes of the Veterans Employment Opportunities Act of 1998).  Considering the deference that should be afforded to OSC in the context of an initial stay request and the assertions made in the instant stay request, I find that there are reasonable grounds to believe that the agency terminated Mr. Doe during his probationary period in violation of 5 U.S.C. § 2302(b)(12).[9]

---

[8]  Because I find herein that OSC has made a sufficient showing regarding 5 U.S.C. § 2301(b)(6), (8)(A) as it relates to 5 U.S.C. § 3502 and 5 C.F.R. part 351, I need not address OSC's allegations regarding 5 C.F.R. § 315.801 et seq. or the three other identified merit system principles at this time.

[9]  I note that then-Member Raymond A. Limon granted OSC's request for a stay based on similar allegations in *Special Counsel ex rel. John Doe v. Department of Agriculture*, MSPB Docket No. CB-1208-25-0018-U-1, Order on Stay Request (Feb. 25, 2025).

OSC also asks the Board to grant a stay request for "all other probationary employees that [the agency] has terminated since February 13, 2025," pursuant to letters stating: "The [a]gency finds, based on your performance, that you have not demonstrated that your further employment at the [a]gency would be in the public interest." SRF, Tab 1 at 23. On March 3, 2025, I issued an Order, pursuant to 5 C.F.R. § 1201.136(e), directing OSC to provide additional information regarding its request to stay the terminations of individuals other than Mr. Doe. SRF, Tab 4. In its response, OSC provided a list of 5,692 former employees, including Mr. Doe, who were terminated during their probationary periods; it stated that this list was provided by the agency on March 3, 2025, and it explained why it could not provide a definitive list of all affected individuals. *Special Counsel ex rel. John Doe v. Department of Agriculture*, MSPB Docket No. CB-1208-25-0020-U-2, Stay Request File 2 (SRF-2), Tab 2 at 7-8, 10-100.[10] For example, OSC states that the agency cautioned that this number was still in flux due to corrections, rehirings, and changes to mission-critical designations. *Id.* at 7. Indeed, OSC asserts that, on February 24, 2025, the agency provided documentation indicating that, as of February 18, 2025, it had terminated 5,950 probationary employees. *Id.* OSC further asserts that the number of probationary terminations may continue to change and it is not practicable for OSC to "track the moving target of how many individuals are subject to its stay request each day." *Id.* at 8. Because there is a possibility that additional individuals, not specifically named in the agency's response, may be affected by these probationary terminations, and given the assertions made in OSC's initial stay request and the deference to which we afford OSC in the context of an initial stay request, I find that there are reasonable grounds to believe that the agency terminated the aforementioned probationary employees, in violation of 5 U.S.C. § 2302(b)(12).

---

[10] In granting OSC's initial stay request, I have considered the evidence and argument filed in the MSPB Docket Nos. CB-1208-25-0020-U-1 and CB-1208-25-0020-U-2 matters.

**ORDER**

Based on the foregoing, I grant OSC's stay request for Mr. Doe and all other probationary employees whom the agency has terminated since February 13, 2025, pursuant to letters stating: "The [a]gency finds, based on your performance, that you have not demonstrated that your further employment at the [a]gency would be in the public interest." Accordingly, a 45-day stay of Mr. Doe's termination and the probationary terminations of the aforementioned probationary employees are GRANTED. The stay shall be in effect from March 5, 2025, through and including April 18, 2025.

It is further ORDERED as follows:

(1)    During the pendency of this stay, Mr. Doe shall be placed in the position that he held prior to the probationary termination. Likewise, all other probationary employees whom the agency has terminated since February 13, 2025, pursuant to letters stating, "The [a]gency finds, based on your performance, that you have not demonstrated that your further employment at the [a]gency would be in the public interest," shall be placed in the positions that they held prior to the probationary terminations;

(2)    The agency shall not effect any changes in the aforementioned employees' duties or responsibilities that are inconsistent with their salary or grade level, or impose upon them any requirement which is not required of other employees of comparable position, salary, or grade level;[11]

---

[11] OSC and the agency should cooperate in good faith to notify the individuals to whom this Order applies of this Order's issuance and of the measures ordered herein.

(3)    Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;[12]

(4)    Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B), and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before April 3, 2025; and

(5)    Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board on or before April 10, 2025.


FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.

---

[12] Submissions to the Clerk of the Board should be filed under MSPB Docket No. CB-1208-25-0020-U-2 and served only on OSC or the agency, as appropriate.