# **EXHIBIT E**



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

April 8, 2025

MEMORANDUM FOR OFFICE OF SPECIAL COUNSEL PERSONNEL

FROM:     Charles Baldis, Senior Counsel
          U.S. Office of Special Counsel (OSC)

SUBJECT: Updated Policy Regarding Recent Probationary Employee Cases

Summary and Policy

Pursuant to the authority delegated to me by Acting Special Counsel Greer in Directive No. 9, this memorandum notifies Office of Special Counsel (OSC) personnel of the updated policy and procedures regarding complaints from employees at numerous agencies alleging that their probationary terminations constituted a prohibited personnel practice (PPP) since no earlier than January 20, 2025 through the present.

According to an April 4, 2025 memorandum prepared by the Investigations and Prosecution Division (IPD) of OSC, "since February 2025, OSC has received 2,094 complaints from employees at numerous agencies alleging that their probationary terminations constituted a [PPP]." Further, the memorandum explained, "[u]pon review of these probationary termination complaints, OSC concluded that nearly all of them presented the same legal issues."

It is hereby the policy of OSC that any previous position taken by OSC in filings before the Merit System Protection Board (MSPB) are repudiated and that **these terminations, in general, do not constitute prohibited personnel practices in violation of 5 U.S. Code § 2302.** This policy is not exhaustive, and OSC personnel tasked with these cases should not assume that there are no exceptions based on individual circumstances.

Legal Background

The legal theory promoted by probationary employees in these cases appears to follow the same construction in each case.

First, the argument goes, these terminations are disguised Reductions in Force (RIFs), and the applicable RIF regulations at 5 CFR §§ 351.201 - 351.205 were not followed, which creates a violation of 5 U.S.C. § 2302(b)(12), "tak[ing] or fail[ing] to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title."

Second, the argument goes, these terminations violated 5 CFR § 315.803 or 5 CFR § 315.804 governing the procedures for terminations of probationary employees, thereby also violating 5 U.S.C. § 2302(b)(12).

A RIF, properly applied, targets a position and not a person. According to the United States Court of Appeals for the Federal Circuit, "a reduction in force 'is not an adverse action against a particular employee, but is directed solely at a position within an agency.'" *Tippins v. United States*, 93 F.4th 1370, 1375 (Fed. Cir. 2024) (quoting *Welch v. Department of the Army*, 323 F.3d 1042, 1046 (Fed. Cir. 2003)).

A mass termination event of any group of employees is not, by definition, a RIF. For example, recently, the Office of the Director of National Intelligence issued a directive "to the heads of the IC agencies to fire and revoke the security clearances of all IC employees who engaged in ... obscene and sexually explicit chats." ODNI News Release No. 02-25, March 14, 2025, https://www.odni.gov/index.php/newsroom/press-releases/press-releases-2025/4053-pr-02-25. This mass termination event was not a RIF because it targeted the specific employees and not their positions.

It is not apparent from the facts alleged that the terminated probationary employees were targeted because of a reduction in force effort targeting the positions that they held. Rather, it seems that they were targeted because they were probationary employees. While there is ongoing litigation in this matter, there is no well-established precedent that the targeting of probationary employees as a class constitutes a RIF, and OSC will not assert itself into this unsettled legal question.

Rather, OSC will treat the termination of probationary employees as an ordinary termination of probationary employees unless there is substantial evidence of a RIF.

The remaining issue relates to alleged violations of 5 CFR § 315.803 and 5 CFR § 315.804. 5 CFR § 315.803(a) provides as follows:

> The agency shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment.

5 CFR § 315.804(a) provides, in relevant part:

> [W]hen an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

It is important to interpret these regulations in light of existing law. Congress made the deliberate choice that probationary employees should not be able to contest the grounds for probationary terminations except on narrow grounds listed in 5 U.S. Code § 7511. The United States Court of Appeals for the Fourth Circuit explained:

> This is reflected in the numerous ways that the law treats probationary and non-probationary employees differently. For example, probationary employees are explicitly excluded from the protections against demotion or removal for unacceptable performance under 5 U.S.C. § 4303. *See* 5 U.S.C. § 4303(f)(2). These protections include written notice thirty days in advance of the adverse employment action, representation 'by an attorney or other representative,' and a final written decision. *Id.* § 4303(b)(1). Probationary employees are not afforded the full rights that non-probationary employees have to appeal a removal or demotion for unacceptable performance to the MSPB. *See id.* § 4303(e). Similarly, probationary employees do not possess the protections granted to non-probationary employees against removals for such reasons 'as will promote the efficiency of the service.' *Id.* § 7513(a); *see also id.* § 7511(a)(1)(A)(i). As the D.C. Circuit has recognized, 'The substantial protections that Congress made available only to tenured employees indicate that Congress recognized and approved of the inextricable link between the effective operation of the probationary period and the agency's right to summary termination.' *INS*, 709 F.2d at 728.

*Nat'l Treasury Emples. Union v. Fed. Labor Rels. Auth.*, 737 F.3d 273, *277 (4th Cir. 2013). In addition, the United States Court of Appeals for the D.C. Circuit recognized early after the enactment of the Civil Service Reform Act that "Congress clearly linked the agency's right to discharge summarily a probationary employee to the probationary period[,]" *United States Dep't of Justice v. FLRA*, 709 F.2d 724, 727 (D.C. Cir. 1983), and it quoted the relevant Senate Committee report to explain:

> The probationary * * * period * * * is an extension of the examining process to determine an employee's ability to actually perform the duties of the position. *It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period.* S. Rep. No. 95-969, 95th Cong., 2d Sess. 45 (1978) (emphasis added).

*Id.* at 727-28. *See also Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth.*, 848 F.2d 1273, 1275 (D.C. Cir. 1988) ("Congress affirmatively intended agencies to retain the power to summarily terminate probationary employees.").

Given this context, a plain text reading of the regulatory framework leads to the conclusion that agencies hold a great deal of discretion in how and whether to terminate probationary employees. 5 CFR § 315.803(a) provides that they *shall* terminate employees who fail to satisfy the relevant qualifications, but it does not say that agencies must retain probationary employees who do not fail to satisfy those qualifications. Similarly, § 315.804(a) is conditional—"*when* an agency decides to terminate ... *because* [the probationary employee's] work performance or conduct

during this period fails to demonstrate his fitness or his qualifications…" (emphasis added)—meaning that § 315.804(a) does not apply when an agency decides to terminate probationary employees for other reasons.

Moreover, the appeal rights of probationary employees to the MSPB under § 315.806 limit those rights to terminations related to discrimination or terminations related to conditions arising before employment, neither of which apply in the ordinary allegations here. This weighs heavily against treating alleged violations outside of those limitations as matters in which OSC should intervene.

Lastly, the statutory requirement for investigation of PPP complaints provides:

> The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation *to the extent necessary* to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

5 U.S. Code § 1214(a)(1)(A) (emphasis added).

Given the similar nature of "nearly all" of these probationary termination complaints, the investigation necessary to determine whether there are reasonable grounds to believe that a PPP has occurred, exists, or is to be taken, is limited. Further investigation beyond a simple review of the complaint should only be considered necessary if there is reason to believe the termination was motivated by a recognized PPP, such as whistleblower retaliation.

Procedures

For the above reasons, the relevant OSC personnel should adopt the following procedures for all cases involving probationary employee terminations from January 20, 2025 through May 31, 2025.

1) For each case, determine, based on the allegations reported, whether the probationary employee's complaint "present[s] the same legal issues" described in the April 4, 2025 memorandum or a substantially similar issue addressed in the legal reasoning described above *and no other substantial allegation or evidence of a recognized PPP or whistleblower disclosure*, if the allegations presented are sufficient to make such a determination.

    a. If the determination is in the affirmative, then the relevant OSC personnel should treat the investigation as adequate to determine that there are no reasonable grounds to believe that a PPP has occurred, exists, or is to be taken, and they should terminate the investigation pursuant to 5 U.S. Code § 1214, including satisfying any statutory obligations and providing explanation based on all or portions of the above legal reasoning as appropriate.

 b. If the determination is in the negative, then the relevant OSC personnel should proceed with the ordinary investigation of that case, subject to any other restrictions of law or previous directives of the Acting Special Counsel and also subject to the policy and legal position articulated above.

 c. If the allegations presented are insufficient to make such determination, then the relevant OSC personnel should proceed to investigate the case until such time as he or she is able to do so, subject to any other restrictions of law or previous directives of the Acting Special Counsel and also subject to the policy and legal position articulated above, and then proceed under the appropriate step above.

This policy and these procedures should be applied to all cases pending and future that fall within the described category.