# EXHIBIT H



KRISTIN D. ALDEN (DC, MD, VA)
MICHELLE BERCOVICI (DC, MD)
JAMES M. EISENMANN (DC, MD)

ROSS FISHBEIN (DC, MD)
BENJAMIN SMITH (DC)
SHOMAR SEARCHWELL (DC)

PHILIP A. MUELLER OF COUNSEL (DC, MD)

February 14, 2025

**By Online Portal**

Hampton Dellinger
Special Counsel
U.S. Office of Special Counsel
1730 M St. NW, #218
Washington, D.C. 20036

>   Re:   <u>**Summary Termination of Federal Employees**</u>
>         <u>*Request to Stay Probationary Terminations*</u>

Dear Mr. Dellinger:

Complainants with and through counsel, Alden Law Group, PLLC and Democracy Forward Foundation, hereby petition the Office of Special Counsel ("OSC") for an immediate stay of the summary terminations of probationary employees.  We request that the OSC immediately file a petition with the Board pursuant to 5 C.F.R. § 1201.134 to stay the terminations.

Beginning on or about February 12-14, 2025, multiple federal agencies–at the direction of the Trump White House and the Department of Government Efficiency–began mass terminations of thousands of probationary employees. The Office of Special Counsel is uniquely and statutorily situated to defend executive branch employees from these illegal actions by Agency heads.

In the present case, a vast and swiftly growing number of federal employees across multiple agencies have been summarily terminated during their probationary period.  Employees terminated without notice and without any bona fide consideration of their individual performance face immediate and significant harm if the terminations are permitted to stand.

As explained in detail in the attached complaint and Form 11, these mass terminations, which were indisputably conducted with no regard for the performance or conduct of individual probationary employees, are plainly unlawful, violate foundational merit system principles, and constitute multiple prohibited personnel practices (PPPs) under 5 U.S.C.§ 2302.

Under separate cover, we have identified individual employees by Agency seeking relief, and will continue to supplement with additional complainants as information becomes available.

1850 M Street, NW, Suite 901, Washington, DC 20036 │TEL: 202.463.0300  FAX: 202.463.0301│www.AldenLG.com

February 14, 2025
Page 2

The named complainants herein serve as representatives of terminated probationers at each of their Agencies.

We respectfully request that the Office of Special Counsel intercede on behalf and grant a stay of the summary probationary terminations of complaints, pending an investigation into multiple agencies' blatantly prohibited conduct.

We offer whatever help and assistance that may expedite the filing of a petition. If you have any questions or concerns, please do not hesitate to contact us.

Very truly yours,

*Michelle Bercovici*

Michelle F. Bercovici
mbercovici@aldenlg.com

Victoria Nugent
Michael C. Martinez
Skye L. Perryman
DEMOCRACY FORWARD FOUNDATION
vnugent@democracyforward.org
mmartinez@democracyforward.org
sperryman@democracyforward.org

MB/hs

Enc.

*Attachment to OSC Form 14*

<u>**COMPLAINT ON BEHALF OF TERMINATED PROBATIONARY EMPLOYEES**</u>

Complainants with and through counsel, Alden Law Group, PLLC and Democracy Forward Foundation, file this Complaint on their own behalf as well as all others similarly situated. As the situation is rapidly developing, counsel will be supplementing this instant complaint with additional agencies and representative complaints.

**I.        INTRODUCTION**

Beginning on or about February 12-14, 2025, multiple federal agencies—at the direction of the Trump White House and the Department of Government Efficiency—began mass terminations of thousands of probationary employees. These mass terminations, which were indisputably conducted with no regard for the performance or conduct of individual probationary employees, are plainly unlawful, violate foundational merit system principles, and constitute multiple prohibited personnel practices (PPPs) under 5 U.S.C.§ 2302.

These PPPs include but are not limited to violations of:

- **Section 2302(b)(4), deceive or willfully obstruct any person with respect to such person's right to compete for employment**. The indiscriminate mass firings constitute "willful obstruction" of the probationary employees' "right to compete for employment." The probationary period is a continuation of the federal hiring process with employees competing for the chance to be kept on at the end of the period.

- **Section 2302(b)(10), discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of other**s. Probationary employees subject to indiscriminate mass firing are plainly being discriminated against for reasons entirely unrelated to their performance.

- **Section 2302(b)(12), take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title [merit system principles]**. The indiscriminate mass firings violate multiple merit system principles, codified at 5 U.S.C. § 2301, including but not limited to:

    - **Section 2301(b)(6)**, which provides that employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards. Mass indiscriminate terminations are, by definition, not based on the performance of the individual employee.

- o **Section 2301(b)(8)**, which provides that employees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes. Mass terminations are arbitrary as they fail to take into account the specific conduct or performance of individual employees.

- o Violations of law and regulation requiring the use of reduction in force procedures to effect mass layoffs. **5 U.S.C. § 3502; 5 C.F.R. Part 351**.

- o Abrogation of the clear letter and intent of the Civil Service Reform Act and implementing regulations, which entitle probationary employees to be evaluated for continued employment based on their performance and conduct. **5 U.S.C. § 7511(a)(1)(A)(ii); 5 U.S.C. § 7511(a)(1)(C)(ii)**.

An OSC investigation will likely reveal additional PPP violations. But it is already extraordinarily clear that agencies' indiscriminate mass termination of probationary employees violate the PPPs noted above.

As such, the attached named complainants, representative of all probationary employees at their agencies—each of whom was purportedly terminated in the indiscriminate mass terminations—respectfully request that the Office of Special Counsel seek an immediate stay of their adverse personnel actions and order them back into their positions.

## II.   CIVIL SERVICE REFORM ACT AND MERIT SYSTEMS LAWS, RULES AND REGULATIONS

The Civil Service Reform Act ("CSRA") provides for probationary or trial periods which function as an essential element of the required individualized assessment of any particular employee's fitness for federal service, which shall not be prematurely halted and may be halted only due to performance or conduct related issues. The Office of Personnel Management ("OPM") exercises delegated authority to promulgate regulations implementing the CSRA and provide general guidance to agencies on procedures to follow in taking certain personnel actions. The CSRA and OPM's implementing regulations also mandate that before an agency may conduct a mass termination of employees—including probationary employees—the agency must comply with specific procedures and weigh particular factors through Reduction in Force procedures.

### A. Purpose and Establishment of Probationary Periods

Contrary to assertions from President Trump and OPM spokespersons, the probationary period is designed to function as an individualized assessment of a particular employee's fitness for federal service following a structured, merit-based selection process. The probationary period, as described below, is a well-established and centuries-old concept central to the civil service system. Critically, it is designed to be an individualized, supervisor-led assessment of an individual's suitability for continued employment. Utilizing the probationary period as a loophole to effect the mass layoff of employees at an agency is wholly unprecedented and an unlawful abuse of authority that strikes at the heart of merit systems principles.

1.      The Competitive Service's "Probationary Period":

The term "probationary period" applies to employees in the competitive service. The concept of a probationary period is well over a hundred years old – Congress established a probationary period as part of the modern civil-service system in enacting the 1883 Pendleton Act, 22 Stat. 403, ch. 27 (amended 1978); *see* 22 Stat. 404, ch. 27, § 2(4); *see also Kato v. Ishihara,* 360 F.3d 106, 113 (2d Cir. 2004); *INS v. FLRA,* 709 F.2d 724, 725 n.1 (D.C. Cir. 1983). Congress's continuing belief in the importance of a probationary period was reflected in the passage of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101–7135, which preserved the probationary period for new employees and expanded it to cover new appointments to managerial and supervisory positions. *Compare* 5 U.S.C. § 3321 (1976) (establishing a "period of probation before an appointment in the competitive service becomes absolute"), *with* 5 U.S.C. § 3321(a) (1982) (authorizing a probationary period for new employees and appointments to managerial and supervisory positions); see also *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 737 F.3d 273, 276–77 (4th Cir. 2013).

In the CSRA, Congress defines the "probationary period" to be the "first year of service" after which the "employee" may be removed only for cause. "A person employed in the competitive service … is appointed … subject to the probationary period" identified at § 315.801. 5 C.F.R. § 315.201(a). As the CSRA's legislative history reveals, and the Senate report explains, "The probationary or trial period ... is an extension of the examining process to determine an employee's ability to actually perform the duties of the position. It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period." S. Rep. 95–969, at 45 (1978), 1978 U.S.C.C.A.N. 2723, 2767.

2.      The Excepted Service's "Waiting Period":

Excepted service employees are not subject to a "probationary period." *See* 5 C.F.R. § 316.301(a). Nonetheless, Congress amended the CSRA to require a trial period for excepted service employees. The CSRA applies to non-preference eligible excepted service employees a two year "waiting period" similar to a "probationary period." 5 U.S.C. § 7511(a)(1)(C)(ii). The legislative history explains the purposes of this 2 year "waiting period" for non-preference eligible excepted service employees:

> OPM recommended that there should be a 2-year waiting period before excepted service personnel would receive the procedural protections….
>
> The 2-year waiting period [sic] excepted service personnel will ensure that the *agency can fully judge an employee's performance and yet vest these employees with important job protection*s.….

*Van Wersch v. Department of Health & Human Services*, 197 F.3d 1144, 1149 (Fed. Cir. 1999), *quoting* 136 Cong. Rec. 20365, 20366 (1990). This waiting period is comparable to the one-year probationary period applicable to competitive service employees. These periods serve the same purpose: to give an agency an opportunity to terminate an employee before the employee's due process rights attach. *See* 1990 U.S.C.C.A.N. 695, 698.

The intent of the waiting/probation period is to allow an agency to determine the fitness of an employee. That purpose is served in the competitive service following "continuous service under other than a temporary appointment." § 7511(a)(1)(A)(ii). Likewise, in amending the CSRA to include excepted service trial periods, Congress concluded that in the excepted service, the purpose is served following "continuous service … under other than a temporary appointment". § 7511(a)(1)(C)(ii).

Congress tasked the Office of Personnel Management (OPM) with establishing the rules for the competitive service. Id. § 1301. Pursuant to its authority, OPM has issued regulations concerning probationary employees. *See* 5 C.F.R. part 315, subpart H (§§ 315.801-315.806). OPM's regulations provide that probationary employees are entitled to some protections against removal, such as advanced notice of a pending removal and limited rights of appeal to the Merit Systems Protection Board (MSPB). *Id*. §§ 315.804(a), 315.805, 315.806.

Critically, OPM's regulations direct that agencies "**shall** utilize the probationary period as fully as possible to determine" the employee's fitness for duty and "shall terminate his or her services during this period **if the employee fails to demonstrate fully his or her qualifications** for continued employment." 5 C.F.R. § 315.803 (emphasis supplies). Nothing in the legislative history, the regulations, or the statute suggests that an agency can abuse the limited rights of probationary employees in order to summarily terminate employees for reasons unrelated to the employee's performance and suitability. If an agency wishes to terminate a group of employees, Congress and OPM have established separate procedures via the RIF process.

## B. RIF Requirements

For federal employees, mass layoffs are referred to as "reduction in force"(RIF) actions. Congress enacted a law with specific requirements an agency must follow in the event it needs to conduct a reduction in force, to include detailed requirements regarding retention preferences, considerations for veterans, and notice requirements. 5 U.S.C. § 3502. Congress delegated to OPM the authority to promulgate regulations that agencies must follow in implementing reductions in force. 5 U.S.C. § 3502(a). OPM's long-standing regulations for implementing RIFs, at 5 C.F.R. Part 351, require that agencies follow RIF regulations "when the release [of an employee] is required because of lack of work; shortage of funds; insufficient personnel ceiling; reorganization; …or reclassification of an employee's position due to erosion of duties[.]" 5 C.F.R. § 351.201(a)(2).

Unlike Chapters 43 and 75 of Title 5, the provisions governing RIFs contain no exclusions for probationary employees. Congress was clear that the statutory requirements applicable to RIFs apply to "each employee in or under an Executive agency," except Senior Executive Service, Senate confirmed appointments, and the FBI and DEA Senior Executive Service. 5 U.S.C. § 3501(b). OPM's RIF regulations similarly cover all employees in executive branch agencies and contain no exclusions for probationary employees. (*Compare* 5 C.F.R. § 351.202(b) (excluding from RIF procedures Senior Executive Service positions and appointments requiring Senate confirmation)).

4

Critically, before conducting a RIF, an agency must determine the retention and standing of *each competing employee*" based on "competitive area" and "competitive level." § 351.401. Prior to conducting a RIF, an agency must identify and establish "competitive areas in which employees compete for retention." § 351.402(a). A competitive area must be defined solely in terms of the agency's organizational unit(s) and geographical location and... it must include all employees within the competitive area so defined. § 351.402(b). Within each competitive area, each agency must "establish competitive levels consisting of all positions in a competitive area which are in the same grade (or occupational level) and classification series, and which are similar enough in duties, qualification requirements, pay schedules, and working conditions…" § 351.403(a)(1).

Congress also required that OPM prescribe regulations for the release of competing employees in a RIF which gives due effect to certain factors, such as tenure of employment, veterans preference, length of service, and efficiency of performance ratings. 5 U.S.C. § 3502.

OPM's regulations explicitly include, and apply to, probationary employees. Within competitive areas/levels, employees are grouped in retention registers according to tenure status. Tenure Group II includes, for competitive service employees, employees serving probationary periods and career conditional employees, and for excepted service employees, employees serving a trial period or tenure equivalent to career-conditional appointment in the competitive service. § 351.501(b)(2); § 351.502(b)(2). Each tenure group, is further divided into subgroups, which accord priority based on veteran status, seniority, and performance. Further, for both excepted and competitive service employees, OPM's regulations include a Tenure Group III, which must be released prior to employees in Tenure Group II. Tenure Group III is comprised generally of employees under indefinite appointments, non-permanent term appointments, and temporary appointments. § 351.501(b)(3); § 351.502(b)(2).

### III.    MASS TERMINATION OF PROBATIONERS

#### A. <u>Terminations at Multiple Agencies</u>

On January 20, 2025, OPM issued a memorandum providing guidance to federal executive agencies regarding "Guidance on Probationary Periods, Administrative Leave and Details,"[1] which requires agencies to identify, within four days:

> all employees on probationary periods, who have served less than a year in a competitive service appointment, or who have served less than two years in an excepted service appointment, and send a report to OPM listing all such employees to employeeaccountability@opm.gov, with a copy to Amanda Scales at amanda.scales@opm.gov. In addition, agencies should promptly determine whether those employees should be retained at the agency.

*Id*.

---

[1] https://chcoc.gov/sites/default/files/Guidance%20on%20Probationary%20Periods%2C%20Administrative%20Leave%20and%20Details%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%20FINAL.pdf

OPM instructed agencies to submit their lists and gave them a 200 character limit to explain why the specific probationary employees should stay in government. Jason Miller, *OPM Asks Agencies To Justify Keeping Probationary Employees*, Federal News Network, (Feb. 4, 2025), https://federalnewsnetwork.com/workforce/2025/02/opm-asks-agencies-to-justify-keeping-probationary-employees/. OPM's intent is clear – one recipient stated that while OPM did not explicitly state that employees would be fired if they were not retained, "the underlying message [was clear] that these employees were on their way out." *Id*. Not only were supervisors restricted to tweet-length justifications for employees they sought to retain, but reports indicate that agencies provided some supervisors with less than a few hours to provide these justifications. Eric Katz, *Many Federal Supervisors This Week Had Just Hours To Send Tweet-Length Justifications To Save Their Employees' Jobs*, Government Executive (Feb. 6. 2025), https://www.govexec.com/workforce/2025/02/many-federal-supervisors-week-had-just-hours-send-tweet-length-justifications-save-their-employees-jobs/402804/ (noting a supervisor at Department of Energy was given only 20 minutes to draft and return the justifications).

On Thursday, February 13, 2025, OPM officials met with agency leaders across the federal government and directed them to begin firing all federal employees in their probationary period. Rebecca Beitsch, *OPM Directs Agencies To Fire Government Workers Still On Probation*, The Hill (Feb. 13, 2025), https://thehill.com/homenews/administration/5144113-federal-probationary-employees-fired/. While initial reports suggested that there were "some" exceptions, it is not clear what those exceptions were, the extent of discretion provided to agencies, or whether the exceptions were ultimately maintained.

An OPM spokesperson stated:

> "The probationary period is a continuation of the job application process, not an entitlement for permanent employment. Agencies are taking independent action in light of the recent hiring freeze and in support of the President's broader efforts to restructure and streamline the federal government to better serve the American people at the highest possible standard."

Rebecca Beitsch, *OPM Directs Agencies To Fire Government Workers Still On Probation*, The Hill (Feb. 13, 2025), https://thehill.com/homenews/administration/5144113-federal-probationary-employees-fired/.

Numerous agencies swiftly proceeded on Thursday, February 13, 2025 to carry out OPM's directive, summarily terminating thousands of workers via mass messages sent through pre-recorded videos and on group calls. Hannah Natanson and Emily Davies, *Trump Administration Directs Agency Heads To Fire Most Probationary Staff,* Washington Post (Feb. 13, 2025), https://www.washingtonpost.com/dc-md-va/2025/02/13/trump-administration-fires-probationary-federal-workers/. Some employees were given only thirty minutes to leave the building.

The scope of probationary terminations is rapidly expanding. Early on Thursday, February 14, 2025, NPR reported that: "The Department of Energy plans to lay off most or all of its estimated 2,000 probationary employees Thursday. Over the past 48 hours, at least six other agencies — the

6

Education Department, the Office of Personnel Management, the Department of Veterans Affairs, Small Business Administration, the Consumer Financial Protection Bureau and the General Services Administration initiated layoffs." https://www.politico.com/news/2025/02/13/trump-federal-worker-layoffs-00204180.

1. <u>OPM</u>

At OPM, Acting Director Charles Ezell delivered the news of the mass termination of employees to probationary staff via a pre-recorded video. Terminated probationary employees subsequently received identical termination notices via email, citing their "performance" to assert that the employees "have not demonstrated that your further employment at the Agency would be in the public interest." Hannah Natanson and Emily Davies, *Trump Administration Directs Agency Heads To Fire Most Probationary Staff*, Washington Post (Feb. 13, 2025), https://www.washingtonpost.com/dc-md-va/2025/02/13/trump-administration-fires-probationary-federal-workers/. Probationary employees terminated at OPM included Schedule A employees – individuals, including veterans, with disabilities. Chris Cameron, Nichalas Nehamas, Mattathias Schwartz, Madeline Ngo, *Trump Administration Fires Dozens At Federal Personnel Office*, N.Y. Times (Feb. 13, 2025) https://www.nytimes.com/2025/02/13/us/politics/trump-federal-personnel-layoffs.html. OPM instructed terminated probationary employees to leave the building within an hour of the group call notifying them of the termination. *Id*.

2. <u>Department of Energy</u>

Thursday afternoon, February 13, 2025, the Department of Energy notified supervisors and probationary employees of the Agency's mass termination of its probationary staff. Several hours after the verbal notification of termination, employees received termination notices via email. DoE's probationary termination notice makes no reference to the employee's individual performance. Rather, the termination notice states:

> Guidance from the Office of Personnel Management (OPM) states, "An appointment is not final until the probationary period is over," and the probationary period is part of "the hiring process for employees." [OPM, Practical Tips for Supervisors of Probationers.] "A probationer is still an applicant for a finalized appointment to a particular position as well as to the Federal service." [*See* U.S. Merit Systems Protection Board Report to the President and Congress, The Probationary Period: A Critical Assessment Opportunity (August 2005).] "Until the probationary period has been completed," a probationer has "the burden to demonstrate why it is in the public interest for the Government to finalize an appointment to the civil service for this particular individual." [*Id*.][2]

---

[2] While the notice asserts that these statements are based on OPM guidance, the quotes regarding the nature of the probationary period were taken from a 2005 MSPB report that recommended numerous *changes* to the probationary period laws and regulations. Among others, the changes suggested in the Board's (non-binding) policy paper include recommending that Congress amend Chapter 75 to lengthen the probationary period and suggesting that OPM promulgate procedures that would require an agency to take affirmative action to retain a probationer, and that if no action was taken, the agency would automatically terminate employees upon the completion of their probationary period. MSPB, The Probationary Period: A Critical Assessment Opportunity *Id*. at 34.

> **Per OPM instructions, DOE finds that your further employment would not be in the public interest. For this reason,** you are being removed from your position with DOE and the federal civil service effective today.

Exhibit 1, Notification for Termination During Probationary Period (DoE).

Cuts at the Department of Energy include multiple programs and sub-agencies. Reports out of DOE's the National Nuclear Security Administration were that about 300 of the agency's 1,800 staff were expected to be fired after the agency was denied a national security exemption from reduction in workforce plans. An official interviewed by NPR said OPM provided a template citing "performance reasons" as the cause of the terminations, but that the phrase was later removed because the employees had performed well during their probationary period. *Sweeping cuts hit recent federal hires as Trump administration slashes workforce,* NPR (Feb. 13, 2025), https://www.npr.org/2025/02/13/nx-s1-5296928/layoffs-trump-doge-education-energy.

3. <u>Department of Education</u>

The Department of Education on Wednesday fired at least 60 probationary employees and has begun distributing termination notices to workers in the offices for civil rights, federal student aid and communications, as well as its legal department. https://www.politico.com/news/2025/02/13/trump-federal-worker-layoffs-00204180 .

An employee at the Department of Education received notice of her probationary termination via email, followed by a call from her supervisor, who was as surprised as she was by the termination – he had received the notice at the same time she did. Hannah Natanson and Emily Davies, *Trump Administration Directs Agency Heads To Fire Most Probationary Staff* (Feb. 13, 2025), https://www.washingtonpost.com/dc-md-va/2025/02/13/trump-administration-fires-probationary-federal-workers/.

4. <u>Forest Service</u>

"At the Forest Service, for example, 2,400 recent hires are being let go, according to Andy Vanderheuel, who represents the workers as part of the National Federation of Federal Employees. The agency is excluding firefighters, law enforcement, meteorologists who forecast avalanches and bridge inspectors from the firings, but is otherwise dismissing every recent hire in the competitive service." Eric Katz, T*rump Administration Directs Agencies To Fire Recent Hires En Masse*, GovExec. (Feb. 13, 2025), https://www.govexec.com/workforce/2025/02/trump-administration-directs-agencies-fire-recent-hires-en-masse/403017/; https://news.bloomberglaw.com/daily-labor-report/us-forest-service-to-terminate-3-400-workers-union-leader-says.

5. <u>CFPB</u>

On February 11, 2025, employees at the Consumer Financial Protection Bureau ("CFPB") received notice of their probationary termination. Douglas Gillison and Chris Prentice*, US consumer watchdog fires scores of probationary staff, sources say*, Reuters, Feb. 12, 2025

8

https://www.reuters.com/world/us/us-consumer-watchdog-fires-some-probationary-staff-sources-say-2025-02-12/ ("Elizabeth Aniskevich, a senior litigation counsel in the agency's enforcement division who started in June of last year, said she and others had received the notices Tuesday within minutes of each other."). "CFPB's union has identified approximately 73 'bargaining-unit' employees in their probationary period who were terminated." Laurel Wamsley, *Dozens of CFPB workers are fired as the agency remains shuttered*, NPR, Feb. 12, 2025 https://www.npr.org/2025/02/12/nx-s1-5294479/cfpb-workers-fired-trump-doge. The notification received by the employees, which was based on a template attached, stated "[u]nfortunately, the Agency finds that you are not fit for continued employment because your ability, knowledge and skills do not fit the Agency's current needs." Exhibit xxx, CFPB Memorandum Titled Notification for Termination During Probationary Period.

      6.    <u>SBA</u>

By February 14, 2025, "The Small Business Administration terminated about 720 employees — roughly 20 percent of its permanent workforce, according to a person familiar with the agency, who was granted anonymity to discuss sensitive personnel matters. https://www.politico.com/news/2025/02/13/trump-federal-worker-layoffs-00204180

Letters sent to at least 45 probationers at the SBA stated: "The Agency finds that you are not fit for continued employment because your ability, knowledge and skills do not fit the current needs, and your performance has not been adequate to justify further employment with the Agency." Tim Reid, Nathan Layne, and Karen Freifeld, *Thousands Fired In US Government As Trump, Musk Purge Federal Workers*, Reuters (Feb. 13, 2025), https://www.reuters.com/world/us/mass-firings-federal-workers-begin-trump-musk-purge-us-government-2025-02-13/.

      7.    <u>VA</u>

The Department of Veterans Affairs announced in a press release on Thursday that it was dismissing more than 1,000 employees, including certain probationary employees. The press release claims that the employees were in non-bargaining unit positions and were not in mission-critical positions – positions "primarily…supporting benefits and services for VA beneficiaries." The press release also claimed that employees who elected to participate in OPM's deferred resignation program were exempt from the terminations. *VA dismisses more than 1,000 employees*, VA Press Room, (Feb. 13, 2025 9:06 pm), https://news.va.gov/press-room/va-dismisses-more-than-1000-employees. The release stated that "the dismissals are effective immediately and have been communicated directly to each employee. As an additional safeguard to ensure VA benefits and services are not impacted, the first Senior Executive Service (SES) or SES-equivalent leader in a dismissed employee's chain of command can request that the employee be exempted from removal." *Id.*

      8.    <u>HUD</u>

At the Department of Housing and Urban Development, senior-level managers were told in meetings on February 13, 2025, who on their teams would be cut. A report from NBC News

cited two employees who had knowledge of a planned 50% reduction in the workforce. *Trump administration tells federal agencies to fire probationary employees*, NBC News (Feb. 13, 2025), HUD https://www.nbcnews.com/politics/white-house/trump-administration-federal-agencies-fire-probationary-employees-rcna192149

        9.    GSA

On Wednesday, February 12, about 100 employees at the General Services Administration (GSA) received termination letters. According to reports, one GSA employee said "he had one month left until his probation period ended and had been receiving excellent performance reviews." *Thousands fired in US government as Trump, Musk purge federal workers*, Reuters (Feb. 13, 2025), https://www.reuters.com/world/us/mass-firings-federal-workers-begin-trump-musk-purge-us-government-2025-02-13/.

### B. Terminations of Complainants

Please see enclosed list of terminated employees, by Agency. All complainants identified herein have been summarily terminated. Enclosed as exhibits A-E, please also find documentation for each individual, including a power of attorney. Complainants will supplement with additional narratives regarding each employees. *Appendix A.*

## IV. PROHIBITED PERSONNEL PRACTICES

Each of these complainants have been subjected to multiple prohibited personnel practices and request that OSC enter an immediate stay of their adverse personnel actions and order them back into their positions.

### A. Violations of (b)(4) - Willful Obstruction of Employment

Under 2302(b)(4), an agency may not "deceive or willfully obstruct any person with respect to such person's right to compete for employment." Here, the subject agencies willfully obstructed and interfered with each individual probationer's right to demonstrate their suitability of continued employment via performance. Consistent with OPM regulations, a probationary period is intended to assess an employee's performance. By summarily terminating employees without regard to their performance, agencies obstructed the person's ability to compete for employment. Furthermore, evidence indicates that probationary employees were terminated despite justifications from supervisors supporting each individual's continued performance.

### B. Violation of (b)(10) – Discrimination based on conduct which does not adversely affect performance

Under 2302(b)(10), an agency may not "discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others." Probationary employees subject to indiscriminate mass firing are plainly being discriminated against for reasons entirely unrelated to their performance.

C. **<u>Violations of (b)(12) – Summary Termination of Probationers is Contrary to Laws, Rules, and Regulations Implementing and/or Directly Concerning Merit Systems Principles.</u>**

Under 5 U.S.C. § 2302(b)(12), it is a PPP to:

(12) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title;

The indiscriminate mass firings violate multiple merit system principles, codified at 5 U.S.C. § 2301, including but not limited to:

- **Section 2301(b)(6)**, which provides that employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards. Mass indiscriminate terminations are, by definition, not based on the performance of the individual employee.

- **Section 2301(b)(8)**, which provides that employees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes. Mass terminations are arbitrary as they fail to take into account the specific conduct or performance of individual employees

Moreover, the indiscriminate mass terminations violate other merit system laws, including:

- Abrogation of the clear letter and intent of the Civil Service Reform Act and implementing regulations, which entitle probationary employees to be evaluated for continued employment based on their performance and conduct. 5 U.S.C. § 7511(a)(1)(A)(ii); 5 U.S.C. § 7511(a)(1)(C)(ii). *See* Section II(A), *supra*.

- Violations of law and regulation requiring the use of reduction in force procedures to effect mass layoffs. **5 U.S.C. § 3502; 5 C.F.R. Part 351**. The summary termination of probationers is an end run around statutorily and regulatory mandated requirements for carrying out reductions in force. *See* Section II(B), supra.

- Delivering notice of termination via mass meetings, video recorded messages, or group calls is contrary to the regulatory requirement that agencies provide employees with advance written notice of termination.[3]

These PPP violations are clear, indisputable, and warrant a stay. As Complainants learn more, they intend on further amending their complaint to add more PPPs.

---

[3] While excluded from the provisions of Chapters 43 and 75, probationary employees who are terminated from an initial appointment are entitled to written notice in advance of the adverse action. 5 C.F.R. § 315.804.

We offer whatever help and assistance that may expedite the filing of a petition for stay and investigation of the instant complaints. If you have any questions or concerns, please do not hesitate to contact us.

Very truly yours,

Michelle F. Bercovici
mbercovici@aldenlg.com

Victoria Nugent
Michael C. Martinez
Skye L. Perryman
DEMOCRACY FORWARD FOUNDATION
vnugent@democracyforward.org
mmartinez@democracyforward.org
sperryman@democracyforward.org

12