# EXHIBIT I

*Supplement to OSC File No. MA-25-001448*

February 26, 2025

### SECOND AMENDED COMPLAINT ON BEHALF OF TERMINATED PROBATIONARY EMPLOYEES

Complainants, by and through their counsel, Alden Group, PLLC and Democracy Forward Foundation, incorporate by reference their complaint, filed on February 14, 2025, and their amended complaint, filed on February 22, 2025, and now request that the Office of Special Counsel (OSC) seek a stay of the summary terminations of all employees in probationary/trial periods,[1] starting on February 11, 2025, that were not based on any individualized assessment with respect to the employees' performance and/or conduct.

Complainants allege, based on a review of thousands of representative termination letters—none of which provided any individualized assessment of the terminated employee's performance or conduct—that none of the terminations of probationary employees between February 11, 2025, and the present were based on any individualized assessment and therefore constitute violations of 5 U.S.C. § 2302(b)(12).

### I.   OSC's Stay Request and MSPB's Grant of Stay with Respect to Six Probationary Employees

On February 14, 2025, six complainants, by and through counsel, requested that OSC seek a stay of their terminations with the Merit Systems Protection Board (MSPB), pursuant to OSC's authority at 5 U.S.C. § 1214(b)(1)(A)(i). On February 21, OSC requested that MSPB stay those six terminations, explaining that it had "reasonable grounds to believe that the Agencies engaged in prohibited personnel practices under 5 U.S.C. § 2302(b)(12) by terminating Complainants in violation of the federal laws and regulations governing probationary terminations and reductions in force (RIF)." *See* U.S. Office of Special Counsel's Initial Request for Stay ("OSC Stay Req."). On February 25, MSPB granted the OSC's request and issued a stay for 45 days.

More specifically, OSC believed that the six agencies violated 5 U.S.C. § 2302(b)(12) because the agencies "improperly circumvented [Reduction in Force] regulations by terminating Complainants and other probationary employees en masse without regard to each employee's individual performance for the purpose of restructuring government agencies and reducing costs." As OSC explained, the evidence indicates that "agencies improperly used the probationary status of employees to accomplish a RIF without affording the employees the substantive rights and due

---

[1] We use the terms "probationary" and "trial" periods to refer to the status of federal employees in the competitive and excepted services, respectively, who have not yet accrued Merit Systems Protection Board appeal rights under 5 U.S.C. Chapter 75. For the sake of convenience, we will refer to both periods here as "probationary" periods.

1

process they are entitled to by law." In so doing, the agencies engaged in prohibited personnel practices.

Further, with respect to the two complainants who were in the competitive service, OSC believed that their agencies committed additional prohibited personnel practices by terminating them for reasons other than their individual fitness for employment. As OSC explained, "Terminating probationary employees in the competitive service for reasons other than their individual fitness for federal employment violates 5 C.F.R. § 315.801 et seq. As these regulations and statutes implement or directly concern the merit system principles described in 5 U.S.C. §§ 2301(b)(1), (5), (6), and (8)(A), violating them constitutes a prohibited personnel practice under section 2302(b)(12)."

As evidence of these prohibited personnel practices, OSC pointed to (1) President Trump's Executive Orders and Office of Personnel Management memoranda regarding plans to reduce the size of the federal workforce, (2) the fact that these six employees were fired during the same time period as thousands of other probationary employees, and (3) the individual termination letters of the six complainants—none of which provided any individualized assessment of the terminated employee's performance or conduct. Summarizing its review of the letters, OSC stated, "The language in Complainants' termination notices is quite similar and does not describe any specific issues with any of the Complainants' performance or conduct. Notably, only three of the notices mention performance or conduct at all as a justification for the termination, and none provide any detail or individualized assessment." *Id*. at 2-3.

OSC highlighted specific patterns common across all six agencies:

> It is noteworthy that, as discussed in detail above, the termination letters DOE, HUD, OPM, and VA issued to their own probationary employees follow a similar pattern. In no case do the letters OSC has reviewed demonstrate that Agencies are conducting individualized assessments to ensure they are terminating probationary employees only for performance, conduct, or pre-appointment conditions. Rather, the text of these letters and public statements indicate that Agencies terminated probationary employees to accomplish organizational objectives and not due to the performance or conduct of individual probationers.

OSC Stay Req. at 19 (noting that USDA's letter followed the same pattern).

On February 25, the MSPB granted the OSC's stay request as to these six employees. The Board found "reasonable grounds to believe" that Complainants were terminated during their "probationary period[s] in violation of 5 U.S.C. § 2302(b)(12)."

2

**II.**     *OSC's Findings and Legal Conclusions Apply to All Recently-Terminated Probationary Employees*

OSC's findings and legal conclusions in its February 21 stay request regarding the original six Complainants apply equally and with full force to all probationary employees who were terminated without an individualized assessment as to their performance or conduct during the period. And as the evidence demonstrates, OSC should presume that *all terminations of probationary employees* between February 11, 2025 to the present were effectuated without regard to individual performance or conduct. These terminations were an improper circumvention of RIF regulations (and, for competitive service employees, also a violation of 5 C.F.R. § 315.801 et seq) and therefore constitute a violation of 5 U.S.C. § 2302(b)(12).

As detailed extensively in our filings, thousands of probationary employees received similar termination letters, none of which even attempted to provide an individualized assessment of the terminated employee's conduct or performance. Since filing our original Complaint, which covered six agencies, we have reviewed termination letters at over 22 additional agencies.[2] These termination letters all share the same substantive "core," e.g., citing the same OPM guidance (including either that "an appointment is not final until the trial/probationary period is over," and/or "[p]robationary periods are an essential tool for agencies to assess employee performance and manage staffing levels. "); and providing a perfunctory statement either that "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest" or that the agency is terminating your employment "as part of a workforce restructuring."

We have supplemented our complaint with representative letters and affidavits from employees from at least 22 more agencies, all of which point to the same inescapable conclusion: every probationary termination carried out between February 11, 2025 to the present was done without regard to any individualized assessment of conduct or performance and was therefore a violation of 5 U.S.C. § 2302(b)(12).

---

[2] These termination letters all share the same substantive "core," e.g., citing the same OPM guidance (including either that "an appointment is not final until the trial/probationary period is over," and/or "[p]robationary periods are an essential tool for agencies to assess employee performance and manage staffing levels." (Citing to a January 20,2025, OPM memorandum entitled Guidance on Probationary Periods, Administrative Leave and Details)); and providing a perfunctory statement either that "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest" or that the agency is terminating your employment "as part of a workforce restructuring." Citing to a January 20,2025, OPM memorandum entitled Guidance on Probationary Periods, Administrative Leave and Details

### III. *OSC Should Broaden its Stay Request to Stop Agencies' Widespread Prohibited Personnel Practices*

The Special Counsel should seek a stay of all probationary terminations carried out between February 11, 2025 and the present, because the evidence overwhelmingly indicates that all such terminations are prohibited personnel practices. The Special Counsel's authority is clear: the Special Counsel "may request any member of the Merit Systems Protection Board to order a stay of *any personnel action* for 45 days if the Special Counsel determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice." 5 U.S.C. § 1214(b)(1)(A)(i) (emphasis added). And, here, given the overwhelming evidence that agencies' terminations of probationary employees are prohibited personnel practices, the Special Counsel has an obligation to seek this relief: "The Office of Special Counsel shall…protect employees…from prohibited personnel practices…and, where appropriate [] bring petitions for stays." 5 U.S.C. § 1212(a).

To the extent any agency believes that its termination of a probationary employee was not a prohibited personnel practice and instead was based on a lawful, individualized assessment of the employee's performance or conduct, such agency has the burden to provide evidence to the MSPB as a defense. But after reviewing thousands of termination letters, it seems quite clear that no such individualized assessments exist.

We recommend that OSC issue an additional or amended request for stay seeking that agencies reinstate all individuals terminated during their probationary periods since February 11, 2025, pending OSC's investigation into these prohibited personnel practices. Agencies should be directed to deliver to every terminated employee a notice from OSC that includes the following:

(1) The U.S. Office of Special Counsel is investigating a complaint alleging that the termination of probationary employees from February 11, 2025 to the present constitutes one or more prohibited personnel practices.
(2) OSC petitioned for a stay of these agency actions while it investigates these terminations and the Board has granted the stay request.
(3) As a result, any probationary employee who has been terminated since February 11, 2025, and the present must be reinstated with back pay while the OSC investigation proceeds.
(4) Accepting reinstatement may constitute an election of remedies. Individuals who do not want to elect this remedy or otherwise do not want to be covered by this stay or any corrective action that may be ordered in the future may opt-out by submitting a notice to [insert appropriate contact information].

Finally, we request that OSC advise Agencies that continued efforts to mass terminate probationary/trial employees in this manner is not in compliance with applicable law.

*CONCLUSION*

Thousands of probationary employees are similarly situated to the six workers for whom OSC requested a stay to the MSPB – a request the Board has now granted. It is critical that OSC broaden the scope of its stay request to these additional probationary employees without the need for individual filings with OSC. The allegations and violations, as incorporated by reference from our February 14 and 22 submissions are clear, indisputable, and warrant a stay.

We offer whatever help and assistance may expedite OSC's processes. If you have any questions or concerns, please do not hesitate to contact us.

Very truly yours,

Michelle F. Bercovici
ALDEN LAW GROUP, PLLC
mbercovici@aldenlg.com


Victoria Nugent
Michael C. Martinez
Skye L. Perryman
DEMOCRACY FORWARD FOUNDATION
vnugent@democracyforward.org
mmartinez@democracyforward.org
sperryman@democracyforward.org