**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MORGAN A. SALADINO, *et al.*,<br>*Plaintiffs*,<br>v.<br>U.S. OFFICE OF SPECIAL COUNSEL, *et al.*,<br>*Defendants*. | Civil Action No. 1:25-cv-03107 (CJN) |

**MEMORANDUM OPINION**

In January 2025, Plaintiffs Morgan Saladino and Cheryl Healy were probationary employees in the Departments of Commerce and Health and Human Services, respectively. One month later, they were informed that their probationary employment would be terminated. Like many other probationary employees who received the same notice, Saladino and Healy then submitted complaints to the Office of Special Counsel, a watchdog agency created by Congress to protect the interests of federal employees. The Office, headed at the time by Hampton Dellinger, began petitioning the Merit Systems Protection Board to halt what the Office viewed as unlawful reductions in force. But after President Trump replaced Dellinger with Jamieson Greer, the Office issued a memorandum reversing its view that the mass terminations were unlawful. Invoking that memorandum, the Office closed its investigations into Saladino and Healy's complaints.

Saladino and Healy then filed this lawsuit against the Office of Special Counsel and Greer. They request an order vacating the memorandum and directing the Office to reopen investigations into their claims. But as discussed in greater detail below, Saladino and Healy have failed to establish Article III standing to bring this suit. More specifically, they have not suffered judicially

cognizable injuries from the Office's closure of the investigations into their complaints. And their injuries that *are* cognizable—namely, their terminations—are not redressable by this Court. The Court therefore grants the Government's motion to dismiss this suit for lack of jurisdiction.

## I. Background

The Civil Service Reform Act "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). In general, "[f]ederal employees may contest the validity of their terminations under the [Act] in an administrative tribunal known as the Merit Systems Protection Board." *Maryland v. Dep't of Agric.*, 151 F.4th 197, 205 (4th Cir. 2025) (Wilkinson, J.). But "probationary employees" can "only challenge terminations for 'improper procedure' or discrimination based on 'partisan political reasons or marital status.'" *Id.* (quoting 5 C.F.R. § 315.806).

A probationary employee "is generally a new hire or an employee moving into a new position who is undergoing a trial period to assess [her] fitness for the job." ECF No. 14 (Amended Complaint, or "AC") ¶ 24. "As the term 'probationary' implies, employees so designated are on probation and subject to summary dismissal." *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 737 F.3d 273, 276 (4th Cir. 2013); *Dep't of Just., I.N.S. v. Fed. Lab. Rels. Auth.*, 709 F.2d 724, 725 (D.C. Cir. 1983) ("Congress expressly preserved an agency's discretion to remove summarily a probationary employee."). Probationary periods last one or two years depending on the position and allow the employing agency time to evaluate the employee before granting a permanent appointment. AC ¶ 24; *Maryland*, 151 F.4th at 204.

"Shortly after the 2025 Presidential Inauguration, the federal government began to lay off thousands of probationary employees across multiple federal agencies." *Maryland*, 151 F.4th at 204; *see also* AC ¶ 63 (alleging "a sweeping government-wide effort to terminate thousands of

probationary federal employees"). Saladino and Healy were two such probationary employees, working within the National Oceanic and Atmospheric Administration and the Administration for Children and Families, respectively. AC ¶¶ 14–15. After receiving termination notices in February 2025, and like many other terminated probationary employees, they filed complaints with the Office of Special Counsel alleging that their terminations constituted prohibited personnel practices. *Id.* ¶¶ 64, 119.[1]

The Office of Special Counsel "is an investigative and prosecutorial agency established to seek 'a fair, efficient, and lawfully-conducted Civil Service.'" *Am. First Leg. Found. v. Greer*, 153 F.4th 1311, 1313 (D.C. Cir. 2025) (quoting *Frazier v. MSPB*, 672 F.2d 150, 162 (D.C. Cir. 1982)). The Office is empowered "to investigate 'prohibited personnel practices' and, if warranted, to bring enforcement proceedings before the Merit Systems Protection Board for corrective action." *Id.*; *see* 5 U.S.C. §§ 1212, 1214–15. "The Board's mission," in turn, "is 'to ensure that Federal employees are protected against abuses by agency management, that Executive branch agencies make employment decisions in accordance with the merit system principles, and that Federal merit systems are kept free of prohibited personnel practices.'" *Elgin*, 567 U.S. at 27 (Alito, J., dissenting) (quoting Merit Systems Protection Board, An Introduction to the Merit Systems Protection Board 5 (1999)). "An employee who is dissatisfied with the [Board's] decision is entitled to judicial review in the United States Court of Appeals for the Federal Circuit." *Id.* at 6 (majority opinion). "The Federal Circuit has 'exclusive jurisdiction' over appeals from a final decision of the [Board]." *Id.* (quoting 28 U.S.C. § 1295(a)(9)); *see* 5 U.S.C. § 7703(b)(1).

---

[1] As Plaintiffs put it, "under 5 U.S.C. § 2302(b)(12), it is a prohibited personnel practice to take any personnel action that 'violates any law, rule, or regulation implementing, or directly concerning, the merit systems principles.'" ECF No. 23 (Opp.) at 5. Plaintiffs allege that their terminations constituted reductions in force, or "RIFs," and thus violated regulations detailing how RIFs must be conducted. AC ¶¶ 74–79; Opp. at 9.

Many of the complaints that terminated probationary employees filed with the Office of Special Counsel requested the Office to exercise its authority under 5 U.S.C. § 1214 to seek a stay of their terminations with the Board. Opp. at 9.[2] The Office initially did so, arguing under Special Counsel Dellinger that the mass probationary terminations were part of an unlawful effort to cull the federal workforce by ignoring certain "reduction in force" procedures. AC ¶¶ 74–79. The Board granted one of the Office's stay requests on February 25, 2025, finding that the termination in question likely constituted an unlawful reduction in force. *See* ECF No. 14-2. The Office successfully obtained from the Board a broader stay of over 5,000 probationary terminations a few days later. *See* ECF No. 14-4.

On February 7, however, the President informed Dellinger that his position as Special Counsel was terminated "effective immediately." *Dellinger v. Bessent*, 768 F. Supp. 3d 33, 37 (D.D.C. 2025), *vacated and remanded*, No. 25-5052, 2025 WL 935211 (D.C. Cir. Mar. 27, 2025). A district court quickly enjoined Dellinger's removal, *see id.* at 50–51, but the Court of Appeals stayed that injunction on March 5, thus "giv[ing] effect to the removal of [Dellinger] from his position." *Dellinger v. Bessent*, No. 25-5052, 2025 WL 717383, at *1 (D.C. Cir. Mar. 5, 2025). Dellinger withdrew his challenge to his removal the following day, and the President eventually named Jamieson Greer as Acting Special Counsel. AC ¶¶ 82–83.

Saladino and Healy allege that this change "resulted in an immediate and dramatic reversal of legal positions." *Id.* ¶ 86. More concretely, on April 8, 2025, the Office issued an internal memorandum the plaintiffs call the "Probationary Directive." ECF 14-5. The Directive instructed

[2] *See* 5 U.S.C. § 1214(b)(1)(A)(i) ("The Special Counsel may request any member of the Merit Systems Protection Board to order a stay of any personnel action for 45 days if the Special Counsel determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.").

the Office's staff to close all ongoing investigations into the probationary terminations on the ground that such actions did not qualify as prohibited personnel practices. *Id.* at 5–6; AC ¶¶ 87–88. Pursuant to that new policy, the Office issued "Closure Notices" starting around April 21. AC ¶ 92; ECF Nos. 14-6, 14-7 (April and May Closure Notices). Those Notices informed terminated probationary employees that the Office of Special Counsel was "unable to pursue a claim" that the terminations constituted prohibited personnel practices because the terminations, "in the context of the government-wide effort to reduce the federal service through probationary terminations, [were] more likely effected in accordance with the new administration's priorities than a decision personal to" any given employee. April Closure Notice at 2. Saladino and Healy each received Closure Notices "citing their probationary status" as the reason for the closures of their claims. AC ¶ 121.

Saladino and Healy argue here that although the Probationary Directive purports to offer legal justifications for the Office's "abrupt policy reversal," each of the Office's explanations is "poorly reasoned, factually unsupported, and legally flawed." Opp. at 13. They allege that the Directive, and the "related Closure Notices," "compounded [Saladino and Healy's] injuries" stemming from their terminations. AC ¶ 116. As to Saladino, the "abrupt end to her federal service derailed her professional trajectory in her chosen field" and the "closure of her [Office of Special Counsel] complaint left her without any avenue for redress." *Id.* ¶ 117. As to Healy, she also "suffered harm from the effort to terminate her employment" and the closure of her complaint similarly "left her without any avenue for redress." *Id.* ¶ 118.

Saladino and Healy (along with three other former probationary employees) brought this suit in September 2025 and moved to proceed under pseudonyms. *See* ECF Nos. 1, 5. After Chief Judge Boasberg denied that motion, *see* ECF No. 12, Saladino and Healy filed an Amended

Complaint proceeding under their legal names. ECF No. 14. They assert two causes of action under the Administrative Procedure Act. First, they claim that the Probationary Directive is arbitrary and capricious because it repudiates the Office's prior position regarding the lawfulness of mass probationary terminations without meaningfully addressing the agency's prior reasoning. AC ¶ 123–135. Second, they claim that the Probationary Directive is "not in accordance with the law" and is "in excess of statutory jurisdiction, authority, or limitations." *Id.* ¶¶ 136–42; *see* 5 U.S.C. § 706(2)(A), (C). The Government moves to dismiss for lack of jurisdiction and failure to state a claim. ECF No. 21.

## II. Analysis

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation modified). Plaintiffs bear the burden of establishing the Court's subject-matter jurisdiction, *see Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), and they "must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified). The Court must accept as true factual allegations in the complaint, granting plaintiffs the benefit of all inferences that can be derived from the facts alleged. *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). But the Court is not limited to the allegations set forth in the complaint to determine whether it has jurisdiction over the case. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). If the Court determines that it lacks jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). The Court therefore "begin[s], and end[s], with an examination of [its] jurisdiction." *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004).

### A. Standing Prerequisites

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To satisfy that requirement, Saladino and Healy must establish that they have standing to sue, meaning, at a minimum, that they have (1) suffered an injury in fact, that is (2) fairly traceable to the challenged conduct of the defendant, and that is (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citation modified).

"The second and third standing requirements—causation and redressability—are often flip sides of the same coin." *FDA v. Alliance for Hippocratic Medicine* ("*Alliance*"), 602 U.S. 367, 380 (2024) (internal quotation marks omitted). But "[r]edressability can still pose an independent bar in some cases." *Id.* at 381 n.1. "For example, a plaintiff who suffers injuries caused by the government still may not be able to sue because the case may not be of the kind 'traditionally redressable in federal court.'" *Id.* (quoting *United States v. Texas*, 599 U.S. 670, 676 (2023)). In other words, plaintiffs can lack standing even if "the Executive Branch is [not] complying with the relevant statutes" because "the question of reviewability is different from the question of legality." *Texas*, 599 U.S. at 685. To satisfy Article III, "'it must be likely, as opposed to merely speculative,' that [a plaintiff's] 'injury will be redressed by a favorable decision.'" *Cross v. EEOC*, 810 F. Supp. 3d 88, 99 (D.D.C. 2025) (quoting *Lujan*, 504 U.S. at 561).

### B. Application

Saladino and Healy do allege cognizable legal injuries in the form of their terminations from federal employment. But because the relief they seek is not likely to redress those injuries, the Court lacks jurisdiction over their suit.

**1. Injury**

Saladino and Healy allege two distinct injuries. "First," they seek "legal redress for their unlawful terminations." Opp. at 27. "Second," they assert that the Office of Special Counsel's "refusal to investigate [their] complaints is an injury in and of itself." *Id.* The first asserted injury is a quintessential injury in fact. Injuries in fact "must be 'concrete,' meaning . . . real and not abstract"; "particularized," meaning "the injury must affect the plaintiff in a personal and individual way;" and "can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *Alliance*, 602 U.S. at 381 (citation modified). Termination of one's employment "undoubtedly meets those requirements." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176 (2011).

Plaintiffs' second asserted injury, however, does not. Saladino and Healy argue that they "have been injured insofar that they have been denied a fair investigation" and "insofar that that absence of a fair investigation resulted in [the Office of Special Counsel] neither seeking nor securing relief on their behalf." Opp. at 31. But a "judicially cognizable injury 'requires, among other things,' that the 'dispute is traditionally thought to be capable of resolution through the judicial process,'" and "[c]hallenges to the Executive Branch's 'arrest or prosecution policies' seldom qualify." *Cross*, 810 F. Supp. 3d at 94 (quoting *Texas*, 599 U.S. at 677).[3]

Saladino and Healy respond that the denial of a "fair investigation . . . is *itself* an injury." Opp. at 31 (emphasis added). In their view, "the denial of a fair process is a cognizable injury regardless of whether the correct process would have resulted in a different outcome." *Id.* at 32

[3] Although Saladino and Healy challenge investigatory rather than prosecutorial decisions, "[t]hat is a distinction without a difference. Because the decision to prosecute is generally the byproduct of an investigation, the investigation itself is treated as a discretionary function." *Cross*, 810 F. Supp. 3d at 96 (internal quotation marks omitted).

(invoking *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026)); *see also CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) (holding that a "plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit*"). They request an order directing the Office of Special Counsel "to reopen and investigate . . . complaints submitted by probationary employees in a manner consistent with its statutory obligations." AC at 37.

This claimed injury-in-fact, however, runs headlong into the Supreme Court's decision in *Texas*, which made clear that federal courts are "not the proper forum for resolving claims that the Executive branch" should "bring more" investigations and enforcement actions. *Texas*, 599 U.S. at 680. Saladino and Healy's core claim is that the Office of Special Counsel is "neither seeking nor securing relief" on behalf of terminated probationary employees, including them. Opp. at 31. But parties who are not themselves "the object of [an agency] enforcement action . . . lack[] standing to challenge the agency's enforcement decisions, including what claims it investigates." *Cross*, 810 F. Supp. 3d at 95. And for good reason: "[A]ccepting [the plaintiffs'] 'Executive-Branch under-enforcement' challenge would open the doors to a lawsuit that 'federal courts have not traditionally entertained.'" *Id.* at 98 (quoting *Texas*, 599 U.S. at 681). Regardless of whether the plaintiffs (or this Court) "agree with [the] agency['s] decisions," *id.* at 97–98, Article III did not "set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the National Government by means of lawsuits in federal courts." *United States v. Richardson*, 418 U.S. 166, 179 (1974).

In short, Saladino and Healy suffered Article III injury-in-fact when their positions were terminated, but not when the Office of Special Counsel closed the investigations into those terminations. For the Court to have jurisdiction, then, the terminations themselves must be

redressable by a judicial order. *See Davis*, 554 U.S. at 734 ("[P]laintiff[s] must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought.") (quotation marks omitted).

**2. Redressability**

"To determine whether an injury is redressable," courts "consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). For the reasons discussed above, plaintiffs' cognizable injuries are their allegedly unlawful terminations. As redress, they request an order vacating the Probationary Directive and Closure Notices and ordering the Office of Special Counsel to reopen its investigations into their claims. *See* AC at 37.

As another judge on this court has put it, "But then what?" *Cross*, 810 F. Supp. 3d at 99. The "power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws." *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986); *see also Trump v. Slaughter*, 146 S. Ct. 2283, 2302 (2026) (describing "investigative and prosecutorial" powers as "quintessentially executive"). Courts have no control over the "depth, length, or outcome" of any such investigation, *Cross*, 810 F. Supp. 3d at 100, so "a judicial decree" requiring the Office to resume investigations into the terminations of probationary employees would do "nothing to change the fact that" the Office still "possess[es] the same underlying" investigatory "discretion" as before. *Texas*, 599 U.S. at 691 (Gorsuch, J., concurring). With no way of knowing how the Office "might choose to exercise its enforcement discretion," Saladino and Healy's theory that their requested relief would redress their injuries thus "'requires speculation' beyond what standing doctrine permits." *Cross*, 810 F. Supp. 3d at 100 (quoting *Am. First Leg.*, 153 F.4th at 1315).

Saladino and Healy resist that conclusion, arguing that their requested relief "would ensure [their] complaints are fairly investigated" and "would remove a substantial obstacle" in their paths. Opp. at 27. In their view, prior to the Probationary Directive, "similar complaints submitted by other probationary employees were deemed credible" by the Office of Special Counsel, resulting in the Office "seeking and securing stay orders from [the Merit Systems Protection Board]." *Id.* "So," they continue, "there is little reason to doubt that should the Court vacate the Probationary Directive and order [the Office] to investigate [Saladino and Healy's] complaints pursuant to a correct understanding of its statutory obligations, then [the Office] would be more likely to determine [Saladino and Healy] were unlawfully terminated and to seek recourse on their behalf." *Id.* The Government's invocation of its unreviewable prosecutorial discretion fails to rebut "this straightforward redressability analysis," the plaintiffs argue, because an order vacating the Probationary Directive "would remove a prohibitive barrier" to relief. *Id.*[4]

Their theory may be straightforward, but it is still speculative. "The alleged causal chain is as follows." *Am. First Leg.*, 153 F.4th at 1315. If the Court vacates the Probationary Directive, the Office of Special Counsel *may* decide to reinvestigate Saladino and Healy's complaints.[5] *If* the Office investigates the complaints, the Office then "*may* request a corrective order by the [Merit Systems Protection] Board." *Frazier*, 672 F.2d at 155 (emphasis added). *If* such an order is sought,

[4] Saladino and Healy also argue that an order requiring the Office of Special Counsel to reopen its investigations would redress the "injury in and of itself" that is the Office's refusal to investigate Saladino and Healy's claims. Opp. at 27. But as discussed above, the closure of the investigations into their complaints without more is not a cognizable legal injury, so redressability as to that alleged injury is irrelevant.

[5] Saladino and Healy request that the Court *order* the Office to reopen and investigate complaints submitted by probationary employees, AC at 37, but "courts generally may not compel" such action. *Am. First Leg.*, 153 F.4th at 1315; *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

the Board then *may* "order relief to [the] prevailing employees, including reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6. In other words, Saladino and Healy's theory of relief "requires speculation about choices by" at least one agency that is "not [a] part[y] to this lawsuit." *Am. First Leg.*, 153 F.4th at 1315. But "'causation generally cannot rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Id.* (quoting *Alliance*, 602 U.S. at 383). And their theory further "requires speculation about how [the Office] might choose to exercise its enforcement discretion, which the courts generally may not compel." *Id.*

Given that "speculative chain," Saladino and Healy have "not shown that a favorable judgment here would very likely spur the next steps necessary to redress" their injuries. *Id.* (quotation marks omitted). That is fatal for their theory of standing, as "the principle [of] redressability generally turns on how a judgment binds the parties, not whether its rationale 'might persuade actors who are not before the court.'" *Id.* (quoting *Haaland v. Brackeen*, 599 U.S. 255, 293–94 (2023)); *see also Texas*, 599 U.S. at 704 (Barrett, J., concurring) (agreeing that the plaintiffs in that suit lacked standing because they "failed to show that the District Court could order effective relief").[6]

[6] As the Fourth Circuit noted in a similar case, "[t]he Civil Service Reform Act's reticulated scheme further supports [the Court's] conclusion on redressability," because in that Act, "Congress 'established a comprehensive system for reviewing personnel action taken against federal employees,' entitling employees to a hearing before the [Merit Systems Protection Board] and judicial review in the Federal Circuit." *Maryland*, 151 F.4th at 215 (quoting *Elgin*, 567 U.S. at 5–6). "The Supreme Court has concluded that Congress intended this scheme to be 'exclusive' and has twice rejected employees' attempts to litigate their claims in other forums." *Id.* "Given this comprehensive review system, *which excludes the federal district courts* and where terminated employees are directed to challenge their terminations and seek reinstatement" within the Executive Branch, there is reason to be "skeptical that the broad relief" that Saladino and Healy seek "is available to them in a federal district court." *Id.* (emphasis added).

## III. Conclusion

Because the Court lacks jurisdiction, it grants the Government's motion to dismiss. A separate Order will issue contemporaneously.

DATE: August 24, 2026

CARL J. NICHOLS
United States District Judge